FRANCIS J. SILVA *vs.* EMMA R. WIMPENNEY.
SAME *vs.* SUSANNA D. DUNHAM.

Dukes County.   Oct. 23, 1883. — Jan. 29, 1884.   FIELD & W. ALLEN, JJ., absent.

Two minor children, while their father was at sea, their mother, who had built with her own money a house upon land owned by the father, having died, left the premises, which they had previously occupied with their mother, and went to live with their uncle, who was executor of her will and called himself their guardian. Their father visited them about a year afterwards, and paid money from time to time for their support, and corresponded with them often, but, after his first visit, went to a foreign country and lived there. The uncle, while the children were living with him and their father was away, let the premises at will only, and without specifying his authority. He credited the children with the rent in his private account-book, and charged them with the cost of their support; and also accounted with their father, so far as required. The mother left a will, by which she gave the house to the children; and the uncle insured it for their benefit. They afterwards gave notice to quit to the tenant of the house, and occupied it themselves. *Held,* on a writ of entry by the father against the children, brought more than twenty years after their mother's death, that there was no evidence that they had acquired a title by adverse possession.

HOLMES, J.   These are two writs of entry, dated August 22, 1882, for the same piece of land in Edgartown. The court below ruled that the tenants had not acquired a title by adverse possession, and we think that the ruling was right. The demandant was the tenants' father, and the only overt acts relied on, granting that he was chargeable with notice of all of them, were all such that he was entitled to assume that they were

done in subordination to his title. So far from there being anything which gave him unequivocal notice that his children were setting themselves up against him, or were being set up against him by their custodian, there was probably no such thought in fact. They admit that they did not entertain it so far as the land was concerned, and it is pretty clear that their self-styled guardian recognized the demandant's title.

The children first lived on the premises when very young, with their mother, their father being most of the time at sea. Then she died, in 1856, and, the children being still minors and their father being at sea, they went to live with their uncle, Dunham, who was her executor, and called himself their guardian. The demandant visited them about a year afterward, and from time to time supported them or paid money yearly toward their support, and corresponded with them often, but, after his first visit, went to Fayal and lived there.

While the children were living with him and the father was away, Dunham, who seems to have been the only person who could have taken charge of the premises, let them, so far as appears, at will only, and without specifying his authority. The letting by itself gave the demandant no reason to suppose that Dunham was not acting for him. Dunham certainly was not acting for himself, and the demandant had the legal title. But take it that the house was let for the benefit of the children, and that the demandant had notice of it. If that were all, as the children had occupied the house by their father's leave up to that time, and as they were too young to live alone after their mother's death, any other reasonable use of the house for their benefit, while the father was away, he had a right to understand to be made upon the assumption that he would agree to it. It would be monstrous to say that, as between a father and children, he must take such acts to be adverse.

The fact that Dunham credited the children with the rent in his private account-book would hardly have been evidence or notice of an adverse relation, had it stood alone and been brought to the demandant's knowledge. But as Dunham charged them with the cost of their support on the other side, the form of the account amounted to nothing, and the substance of it was that the rents went to reduce the sums which the demandant might

otherwise have been called on to pay. Considering this, and that Dunham seems to have accounted to the demandant so far as required, not only is it clear that the demandant had no notice of any holding adverse to him, but it would seem that Dunham recognized his interest and dealt with him as owner.

The tenants rely largely upon their mother's will as giving a different character to Dunham's acts. This will left the house, which the testatrix had built with money left her by her father, and we assume, in favor of the tenants, the land also, to them. They say that, although the disposition was invalid, they must be taken to have been in under it through Dunham, whose acts they have ratified, and therefore under a title adverse to the demandant. But, as has been shown, Dunham's dealing with the property did not appear to set up an adverse title, and the existence of an invalid devise did not give a different interpretation to his acts from that which they would have borne without it. Certainly those acts, even coupled with knowledge of the will, did not give the demandant such notice as he had a right to expect before his children could begin a new and adverse title to the house in which they had been brought up. Possibly the testatrix and Dunham distinguished between the title to the house and the land, as the children did by their own admission. This would account for Dunham's insuring the house for the benefit of the children, if it needs to be further accounted for. But this was not an act affecting the land itself; the demandant was not chargeable with notice of it; he does not appear to have known of it in fact; and it does not appear when the insurance in question was obtained.

The fact that the children, within twenty years, gave notice to quit to the tenant of the house, and have since occupied it themselves, does not call for further observation. We think that there was no evidence that the demandant was barred.

*Verdict for the demandant to stand.*

*C. G. M. Dunham*, for the tenants.
*W. Clifford*, for the demandant.