Dubuque Lumber Company v. N. W. Kimball, C. H. Eighmey, Executors of the Estate of C. W. Robison, Deceased, Appellants.

**Lessee Holding Over:** RENT. After the expiration of the lease under which the lessee agreed to pay $5 per day, he held over for thirty days, and then took a new lease at the rate of $2.50 per day. *Held*, that for the period between the two leases, the lessee was liable for the rent fixed in the former.

**Interested Witness:** STOCKHOLDER AFTER TRANSFER. Where a witness has been an officer and stockholder in plaintiff company, but had resigned and transferred all his interest before the trial, and the company is insolvent, he is not a party interested in the event, so as to disqualify him, under Code, section 4604.

**Construction of Lease:** JURY QUESTION. Defendant leased for five years from plaintiff a sawmill property, including all personal property "now in use in the mill and on the premises," and also all horses and wagons, harness, carts, etc., "now used by" plaintiff. No provision was made for its disposition at the termination of the lease, but at the end of the term a settlement was endorsed on the lease. Three days after the lease was executed an additional contract was entered into between the parties, specifying certain horses, wagons, and harness furnished by plaintiff to defendant, and providing that "similar property in value to be returned at the end of this lease." *Held*, that whether the property specified in the contract was that included in the lease, so as to be included in the settlement, was for the jury.

SAME. Where property was furnished by plaintiff to defendant under a contract providing that "similar property in value to be returned at the end of this lease at the joint expense of these parties," an instruction that plaintiff should be allowed one-half of the value of the property, as fixed at the time of the contract, "after deducting therefrom two horses and three cows," is error, since it is the *value* of the horses and cows at the time of their return which is to be deducted.

INTEREST. On the expiration of a lease in August, 1891, a settlement was made providing that the lessee should leave on the premises property equal in value to that which was there when he entered there. By subsequent leases the term was extended

to January, 1892. *Held*, that interest on the difference in value of the property left should be computed only from 1892.

*Same.* Where plaintiff's claim is based on two items falling due at different times, and on interest thereon computed up to the time of filing suit, he should not be allowed interest on the entire amount, but only on the two items from the dates when they fell due.

**Amendments:** DISCRETION. To refuse to permit plaintiff to amend his petition to enlarge the amounts of his claim against an estate, after the lapse of three years, and just before the case is submitted to the jury, is not an abuse of discretion.

**Review on Appeal:** ISSUE NOT PLEADED. Where the question as to plaintiff's right to prosecute the action was not raised in the pleadings, it will not be considered on appeal.

SAME: *Motion in arrest*, Where the question as to the sufficiency of the petition was not raised by motion in arrest of judgment, it will not be considered on appeal.

*Appeal from Dubuque District Court.*—Hon. J. L. Husted, Judge.

Friday, April 13, 1900.

Action on a claim against defendants, as executors of C. W. Robison, deceased, who pleaded the amount paid on a note of plaintiff and another, as guarantors, as a counter-claim. There was a verdict and judgment for the plaintiff. Both parties appeal, that of defendants being first perfected. —*Reversed.*

*D. E. Lyon* and *Geo. T. Lyon* for appellants.

*R. W. Stewart* for appellee.

Ladd, J.—The plaintiff, on the twenty-second day of January, 1886, entered into an agreement "to lease to C. W. Robison their sawmill property, which includes all their real estate and personal property, now in use in the mill and on the premises, which includes all structures now on the premises, and machines and tools now in use in and around

said structures, and also all horses and wagons, harness, carts," etc., "now used by the Dubuque Lumber Co.," beginning January 25, 1886, and to continue five years. Robison agreed to make certain investments, and all personal property furnished by him, if in existence, was to be returned to him. The rental stipulated was an equal division of profits, payable after making a complete inventory, January 1st of each year. On the last named date there was another contract in these words:

"The Dubuque Lumber Co. furnishes C. W. Robison:

| | |
|---|---|
| 4 horses valued at...... ..................................... | $350 00 |
| 3 good wagons valued at.................................. ... | 150 00 |
| 5 old      "      "   "   ................................... .... | 100 00 |
| 3 four-wheeled carts at ........................... ... ........ | 100 00 |
| 3 two-wheeled carts at............................ ............. | 50 00 |
| 2 sleds at........................... ....................... | 25 00 |
| 2 sets harness and cart harness............................... | 50 00 |
| | $825 00 |

—The same to be used in the business for the joint benefit of D. L. Co. and C. W. R., and similar property in value to be returned at the end of this lease, at the joint expense of the parties, in five years from this date."

The plaintiff alleged that none of the property set out in the contract of January 25, 1886, save two horses, worth seventy-five dollars; three wagons, worth sixty dollars; and two sleds, worth twenty-five dollars, had been returned by Robison at the expiration of the lease, and asked that its claim for one-half of the balance, with interest, be allowed. The executors insisted that this property was the same as that included in the lease, and that the contract of January 25, 1886, was merely supplemental thereto.

If included in the lease, it was fully settled by an indorsement thereon August 5, 1891, in words: "This contract is this day and hereby settled and discharged, so far as all its provisions are concerned," followed by a stipulation for the division of property, and that "all wagons, carts,

trucks, horses, and other personal property furnished by the Dubuque Lumber Co. at the commencement of the lease of January, 1886, shall be returned to the Dubuque Lumber Co., if in existence, and the same, if furnished by Robison, shall be returned to him, as provided for in the lease." It will be observed that the lease covered all property "now used by the Dubuque Lumber Co.," but made no provision with respect to its disposition at the termination of that instrument, and that the contract required "similar property in value to be returned at the end of this lease, at the joint expense of the parties." There was evidence tending to show that the horses and articles were used by the plaintiff at the time the lease was executed, and for this reason the court erred in not submitting to the jury the question as to whether the chattels described in the contract were those referred to in the lease. If they were, the settlement of August 5, 1891, was final. There was also manifest error in directing the jury to allow "one half of the value fixed in the contract of January 25, 1886, herein referred to, as the second item of said lumber company's claim, after first deducting therefrom two horses and three cows." Of course, value, and not property, was to be deducted, and the jury should have been advised to fix that at the time the property was returned. Again, the petition admitted the return of two sleds, valued at twenty-five dollars, and this should have been deducted. Possibly these errors would have been obviated had the condition that similar property in value was to be returned at the end of five years and the admissions been called to the jury's attention in the statement of the issues or elsewhere in the instructions, but that was not done. Notwithstanding the executor's statement that "all said articles, excepting 2 or 3 horses and a part of 2 old wagons, were used up, and became worthless," the plaintiff ought not to be allowed more than it claimed. The evidence showed other of the articles and their value, left on the premises, but as to these no issue was presented.

II.  In the settlement of August 5, 1891, it was agreed "that wood and sawdust of the last year's sawing, equal in value to that received by Robison of the Dubuque Lumber Co., January 25, 1886, shall be left on the premises." Under subsequent leases he held this property until January 1, 1892, though the mill closed in October or November of that year.  Interest on the difference in the value of the wood received and that left should have been computed from January 1, 1892, and not January 25, 1891, as directed.

III.  On March 16, 1891, in a lease of the planing mill, Robison agreed to pay, as rent, "five dollars per day for each working day that the mill is actually in operation," from January 25th to July 25th of that year.  After its expiration he held over till August 20, 1891, and from then on, under another agreement, till January 1, 1892, "at the rate of two and 50-100 dollars per day for every full day during said time that the mill is in actual operation."  The settlement of August 5, 1891, did not purport to include any rent due under these circumstances.  The lessee holding over, however, occupied the premises under the terms of the last lease, in so far as applicable, and the plaintiff was entitled to recover the rental stipulated in the lease of March 16, 1891, from its expiration to August 20th of that year, rather than the reasonable value of the use of the premises, as the court instructed.  *Bank v. Herron,* 111 Iowa, 25.  The amended petition is based on the claim for rent filed in the sum of three hundred and thirty-five dollars and forty-two cents up to January 25, 1891, and subsequently two hundred and thirty-two dollars and twenty-five cents, less an item of thirteen dollars and seventy cents, leaving two hundred and eighteen dollars and ninety-five cents from then till January 1, 1892.  Interest was included in making the total of six hundred and fifty-two dollars and sixty-two cents.  The tenth instruction permitted recovery for this entire amount, with interest from

January 1, 1892. The jury should have been directed to
have allowed whatever was owing on the lease for rent on
the lease of March 16, 1891, not exceeding three hundred
and thirty-two dollars and forty-two cents, with interest
added from July 25, 1891, and, whatever was owing for
rent from that time to January 1, 1892, .not exceeding two.
hundred and eighteen dollars and ninety-five cents, with
interest added from the latter date.

IV. The evidence established Moore's competency to
testify. While he had been an officer of and a stockholder
in the Dubuque Lumber Company for many years, it ap-
peared that he had transferred all interest therein and re-
signed as such officer before the trial, and, besides, that the
company had long been insolvent and its stock worthless.
We have held the interest which will prevent a person from
testifying, under section 4604 of the Code, "means such an
interest in the event as would at common law disqualify a
witness." *Goddard v. Leffiingwell*, 40 Iowa, 249;
*Zerbe v. Reigart*, 42 Iowa, 232. Where the interest
is collateral merely, the competency of a witness may
be restored by the release or transfer of it at any time before
testifying, though this be done for that express
purpose. *Heft v. Ogle*, 127 Pa. Sup,. 244 (18
Atl. Rep. 19); *Insurance Co. v Crane*, 16 Md. 260 (77 Am.
Dec. 293); *Insurance Co. v. Caldwell*, 3 Wend. 301; *Stall v.
Bank*, 18 Wend. 466; *Railroad Co. v. Irick*, 23 N. J.
Law, 320. The rule is thus stated by Black, J., in *Com. v.
Ohio & P. R. Co.*, 1 Grant, Cas. 329 (see *Heft v. Ogle,
supra*): "When the interest of the witness is collateral, his
competency may be restored by a release or transfer of it.
The rule in *Post v. Avery*, 5 W. & S. 509, applies only to
persons who have assigned choses in action on which the
recovery would have been for their own use, if no assignments
had been made. Its object is to prevent a party from trans-
ferring himself into a witness by the magic of a bit of paper.
It forbids one who assigns a claim to sell his oath along with

it. But a person who has a merely incidental interest in the result—an interest which arises entirely out of the fact that the record 'may be evidence for or against him in some other action—may devest himself of such interest, and, if he does so at any time before he is offered as a witness, his testimony must be received.. For instance, a stockholder in a corpora- tion may transfer his stock and become a witness for the company." *Darragh v. Biggen,* 183 Pa. Sup. 397 (39 Atl. Rep. 37), was determined under the provisions of a statute of that state, and is not in point.

V. Regardless of whether an amendment may be filed, after the statutory period for presenting claims, the refusal to permit plaintiff to so amend its petition as to enlarge the amount sought to be recovered on each item, after the lapse of three years, and just before the case was sub- mitted to the jury, involved no abuse of discretion. No issue as to plaintiff's right to prosecute the action was made in the pleadings, nor was the sufficiency of the petition raised by motion in arrest of judgment. For this reason we shall not consider the question at this time. Other errors assigned require no attention.—REVERSED.