MARY L. FRYE AND OTHERS, Appellees, v. GUY C. GULLION AND OTHERS, Appellants.

**Evidence:** TRANSACTIONS WITH A DECEDENT: COMPETENCY OF WITNESS. One claiming an interest in property by virtue of an oral agreement with a decedent is disqualified by the statute, relating to personal transactions with a decedent, from testifying to the agreement.

**Same.** In a partition action between heirs of a deceased person, two of them presenting separate claims which together would equal the entire estate, they cannot by mutual disclaimer of any interest, each in the claim of the other, remove the disqualification of interest as witnesses for each other to personal transactions or communications with the deceased: Nor will the disclaimers have the effect to eliminate such persons as parties to the proceeding and render them competent witnesses, where the disclaimers are so framed as to insure the success of certain heirs and if possible defeat all others, and if the plan is successful leave the way open for the disclaiming parties to share in the estate.

**Real property:** CREATION OF INTEREST BY PAROL: EVIDENCE. Oral gifts and contracts creating an interest in land are not invalid, but they must be established by clear and unequivocal evidence: mere expressions of intent or purpose are not sufficient.

**Adverse possession:** EVIDENCE. Defendant in this action with several other children continued after the death of their father to reside on the home place with their mother, until the other children mar-

ried and separated; the sons working the farm while they lived there. Defendant continued to reside there with his mother, listed the property for assessment to the estate of his father, made some improvements, but his acts were not inconsistent with the theory that he was a tenant in common of the property. The brothers settled their interests in and divided some of their joint property, not however including the home farm, but none of the daughters joined in the settlement. *Held,* that the evidence failed to show title in defendant by adverse possession.

**Same.** Mere continuance in possession of the family homestead by one of the children, after the others had separated and gone to their own homes, is not· an entry upon the land under a claim adverse to the other heirs.

**Cotenants:** IMPROVEMENTS BY ONE TENANT. Ordinarily a tenant in common cannot burden the title of his cotenant by improvements made on his own motion.

*Appeal from Marion District Court.*—HON. EDMUND NICHOLS, Judge.

THURSDAY, JUNE 3, 1909.

REHEARING DENIED TUESDAY, SEPTEMBER 28, 1909.

ACTION in equity for the partition of real estate. Decree as prayed by plaintiffs, and defendants appeal.—*Affirmed.*

*Kinkead & Mentzer,* for appellants.

*Crozier & Welch* and *Hays & Amos,* for appellees.

WEAVER, J.—Alexander Gullion, under whom all parties claim, died intestate December 13, 1888, holding the legal title to two hundred acres of land in Marion County, Iowa. No administration was ever had upon his estate. He left surviving him his widow, Mary Gullion, and Sarah Frye, William Gullion, Andrew J. Gullion, Louis B. Gullion, Rebecca J. Sharon, Eva E. Davis, Dora B. Fee, and

Mary L. Neifert, his children and only heirs at law. The widow, Mary Gullion, died intestate in April, 1905. The daughter Sarah Frye died intestate in the year 1895, leaving her children, Mary L. Frye and Imogene Frye, her only heirs at law; her husband having died previous to her decease. William Gullion, son of Alexander, died intestate in September, 1901, leaving Elizabeth Gullion, his widow, and his children, Loren A. Gullion and Guy C. Gullion, his only heirs at law. This action was instituted by the aforesaid Mary L. Frye and Imogene Frye, Elizabeth Gullion, and Loren A. Gullion, making all the other heirs of Alexander Gullion defendants, for the partition of the land above mentioned. To this petition Andrew J. Gullion answers separately, admitting the allegations of the petition except as to the ownership of said land, and denies that the same constituted any part of the property or estate of Alexander Gullion at the time of his decease. By way of cross-petition he avers that he entered into a contract with Alexander Gullion prior to his death, whereby he undertook to keep and care for his said father and mother during their lifetime, and in consideration of said agreement Alexander Gullion promised that upon his death said land should become the property of the cross-petitioner subject only to the dower interest of his widow. He avers that in pursuance of said agreement he did remain at home and care for Alexander Gullion during the remainder of his lifetime and for the said Mary Gullion during all her widowhood to the date of her death. He further says that upon the death of Alexander Gullion he took possession of the land under claim of ownership and color of right adverse to all the other heirs of said deceased, and has continued therein more than ten years prior to the commencement of this action, whereby he has become and is the owner of all said land except the undivided one-third thereof constituting the widow's share of Mary Gullion, who prior to her decease gave the same to her daughters, Re-

becca J. Sharon, Eva E. Davis, and Dora B. Fee, in payment for services rendered by them to her. The cross-petition further alleges that, relying upon the validity of his claim to the land, he has, with the knowledge and implied consent of all the other heirs, put valuable improvements on the land, for which he asks compensation in the event that plaintiff's claim to a partition is upheld. He also pleads a settlement had with the other sons of Alexander Gullion, by which he avers that his claim to hold the land as his own was confirmed.

The daughters, Rebecca J. Sharon, Eva E. Davis, and Dora B. Fee unite in an answer and cross-petition, denying that the plaintiffs have any interest in the land, and allege that upon the death of their father, Alexander Gullion, his widow, Mary Gullion, became seised of a one-third interest in said property, and that thereafter, having been made practically helpless by a stroke of paralysis, she agreed with her said daughters that, if they would remain with her and care for her until her death, she would devise to them her said share in the land, and that from the time of said promise they should be the owners of said interest, subject only to their rendering the agreed consideration. They allege that they faithfully performed their part of the agreement, and that they are therefore the equitable owners of the one-third part of the land sought to be partitioned. These daughters also answer the cross-petition of Andrew J. Gullion admitting his right of ownership in all the land except the one-third part, which they themselves claimed as aforesaid under the agreement with their mother. Andrew J. Gullion in turn disclaims any interest as against his said sisters Rebecca, Eva E., and Dora B. in the one-third of the land. The other two surviving children of Alexander Gullion, deceased, Louis B. Gullion and Mary L. Neifert, unite in disclaiming any and all interest in the land in favor of Andrew J., Rebecca J., Eva E., and Dora B., whose claims of right in the premises they admit. The

cross-bills are denied by the plaintiffs. From this statement it will be seen that upon the face of the record title the plaintiffs Mary L. Frye and Imogene Frye, as the representatives of their deceased mother, Sarah Frye, are entitled each to the one-half of the one-eighth part of the land left by their ancestor, Alexander Gullion, while Elizabeth Gullion, as the widow of William Gullion, and Guy C. Gullion and Loren A. Gullion, as his children, are entitled each to an one-third of an one-eighth part. These shares were confirmed and established by the trial court, and that decree must be upheld, unless we find that the alleged verbal contract between Andrew J. Gullion and his father in the lifetime of the latter, and the somewhat similar contract between the widow and her three daughters, have, one or both, been fairly established by the record before us.

I. Has the alleged agreement with Andrew J. Gullion been established by sufficient competent evidence? We are compelled to hold that it has not. Andrew J. Gullion

1. EVIDENCE: transactions with a decedent: competency of witness.

is manifestly not a competent witness to such agreement, and, as far as he undertakes to testify to such agreement or to facts from which such an agreement may be implied, it must be left out of our calculation. Aside from his own testimony, the case made by said appellant rests very largely upon the testimony of his brother and sisters, who have each disclaimed in his favor any interest in that part of the estate to which he asserts a right.

By this disclaimer the appellants insist that these persons who would otherwise be incompetent under Code, section 4604, because of their interest in the controversy, are

2. SAME.

rendered competent, and their testimony should therefore receive consideration; but the prohibition of the statute is broader and more comprehensive than counsel would make it. The language is: "No party to any action or proceeding, nor any person interested in the event thereof  .  .  .  shall be examined

as a witness in regard to any personal transaction between such witness and a person at the commencement of such examination deceased . . . . against the heir at law, next of kin, assignee, legatee, devisee or survivor of such deceased person." The brother and sisters were not only parties in fact, but proper parties to the partition proceedings, for upon the face of the record they held an apparent interest in the land to be partitioned. Their disclaimer, when properly made of record, may possibly have removed the disqualification of interest; but it could not remove the disqualification which still attached to them as parties, unless we are able to say that they were no longer proper parties to the action. *Williams v. Barrett,* 52 Iowa, 637; *Burton v. Baldwin,* 61 Iowa, 283; *Culbertson v. Salinger,* 131 Iowa, 303, and other cases there cited. The cases cited by the appellant (*Hicks v. Williams,* 112 Iowa, 691, and *Lumber Co. v. Kimball,* 111 Iowa, 48) are not in point. In the *Hicks* case the witness was not in fact a party to the action. He had been named as such in the petition, but was never served with notice or brought into court, and, being a nonresident, his deposition had been taken in another jurisdiction. In the *Lumber Company* case the objection considered went only to the interest of the witness who was not a party to the action. To adopt the rule contended for by the appellant would be to emasculate the statute. If, in an action of partition between the heirs of a deceased person, two of them could advance separate claims which together would absorb the entire estate, and then by mutual relinquishment may become competent witnesses for each other to testify to personal transactions and communications with the deceased, the temptation to collusion would too often be found irresistible. We do not by this language intimate any distrust of the fairness or truthfulness of any of the parties or witnesses in the case at bar, but call attention to the impolicy of announcing a

doctrine so pregnant with possibilities of wrong and injustice.

But it is said that the disclaimers filed not only removed the disqualification of interest, but also in effect eliminated these persons as parties to the proceedings and made them competent witnesses under the rule observed in *Conger v. Bean,* 58 Iowa, 321. If a full and frank disclaimer of all interest and claim in the property as against the plaintiffs had been made by these witnesses, there would be some chance for argument in support of this proposition (though we do not now pass upon that question); but the disclaimers here entered are in peculiar form. Rebecca J. Sharon, Eva E. Davis, Dora B. Fee, Louis B. Gullion, and Mary Neifert each appear and admit, not the claims made in the plaintiffs' petition, but the claims made by their codefendant, Andrew J. Gullion, while Andrew J. in turn united with Louis B. and Mary in admitting the claims set forth in the cross-petition of their sisters Rebecca J., Eva E., and Dora B. In each case the disclaimer is carefully framed to secure the success of the cross-petitioners and insure, if possible, the defeat of the plaintiffs, and at the same time leave the way open for the disclaiming parties to share in the partition if the cross-petitioners fail. For instance, Louis B. Gullion and Mary Neifert unite in saying that they "disclaim any right, title or interest in or to said land adversely to Andrew J. Gullion or either of the above-named sisters, and hereby consent that judgment and decree may be taken against them in favor of the said Andrew J. Gullion and in favor of Rebecca J. Sharon, Eva E. Davis and Dora B. Fee on their cross-petition." The disclaimer of the three last-named sisters in favor of Andrew J. Gullion, and his disclaimer in their favor, are each in the same guarded terms. In short, it appears to be an alliance, defensive, if not offensive, between the surviving children of Alexander Gullion, to eliminate his grandchildren from any share in

his estate. They concede everything in favor of each other, but nothing whatever in favor of the plaintiffs. In maintaining such an attitude and holding such relation to the land sought to be partitioned, it was both proper and necessary that they be retained as parties until the final decree. Even if they were subject to be held in default, or a default had in fact been entered, no decree fixing the status of all these parties with respect to said title could be definitely determined or entered until all the testimony was in and the cause regularly submitted upon its merits. The trial court was therefore correct in holding these parties to be disqualified as witnesses under Code, section 4604.

Without the testimony from these incompetent sources, the claim of the appellant Andrew J. Gullion, based upon his alleged agreement with his father, has but slight support, while it is negatived by much of his own conduct. Altogether it falls far short of that degree of reasonable certainty which is required to uphold an alleged oral gift or contract of sale from a deceased ancestor. Such gifts and contracts are, of course, not invalid, but they must be well established. The showing must be clear and unequivocal. *Bevington v. Bevington,* 133 Iowa, 351. See, also, note to same authority in 12 Am. & Eng. Ann. Cas. 490. We reach a like conclusion upon the cross-petition of the sisters. It is true they show by several witnesses the expressions of the purpose or desire of the widowed mother that her said daughters should have the benefit of her interest in her husband's estate, but there is little, if any, testimony from competent witnesses to any definite contract or agreement to that effect. Declarations of mere' intent and purpose have never been held sufficient to establish a gift or agreement to devise. or convey. *Cessna v. Miller,* 85 Iowa, 725. The question already considered as to competency of witnesses arises also upon the issue on

3. REAL PROP-
ERTY:creation
of interest by
parol: evi-
dence.

this cross-petition, but we find no error in the application of the statute by the trial court.

II. Has the appellant Andrew J. Gullion made good his claim of title to the land by adverse possession? On this issue we think he clearly failed. At the date of the death of Alexander Gullion, at least seven of the eight children, including Andrew J., were living with him as members of the same family. Until the marriage and subsequent separation of some of them to their individual homes, the sons continued to work the land together, and all had the shelter and benefits of the parental home. The brothers were industrious and thrifty and jointly engaged in business enterprises outside of the farm and for some years continued the same with profit. Later they seem to have settled and divided some or all of their joint holdings, but the division did not include the home farm, though Louis B. testified that it was understood or taken for granted that Andrew J. was entitled to it for staying at home and caring for his mother. None of the daughters of Alexander Gullion had any part in such settlement. After this the management and control of the farm was left to Andrew J. and it may be fairly implied that there was a general tacit understanding that, so long as the mother lived and was given a home, the matter of the estate and property left by the father should be left undisturbed. That Andrew J. believed he was entitled to the farm because of his remaining there and making a home for his mother is very possible, yet if he supposed that he had an agreement with his father to that effect, and that he was keeping and caring for his mother in consideration of the gift or transfer to him of two-thirds of the two-hundred-acre farm, it is somewhat singular that he should now concede to his sisters the other one-third for furnishing the very care and comfort he had himself been paid to supply. It appears that, in some respects, his conduct indicated a claim to

4. ADVERSE POSSESSION: evidence.

ownership of the property, and that he placed some improvements upon it; but his acts ·were not necessarily adverse to the other heirs of his father nor inconsistent with the thought that he was a tenant in common with them, receiving the entire use of the property for assuming their common duty to give a home and support to their mother. In listing the property for assessment, he described it as the "Alexander Gullion estate," and the tax receipts were presumably issued to the same name. He is also shown to have made some admissions inconsistent with his present claim of title and at one time offered to buy out the plaintiffs' interests.

The mere continuance of the appellant in possession of the land after his father's death, and after his brothers and sisters had drifted away to other homes, can not be considered an entry under claim adverse to the other heirs, and there is no clear showing of any subsequent ouster, actual or constructive, sufficient to set the statute of limitations in motion. *Silva v. Wimpenny,* 136 Mass. 253; *O'Boyle v. McHugh,* 66 Minn. 390 (69 N. W. 37); *Hume v. Long,* 53 Iowa, 299; *Shell v. Walker,* 54 Iowa, 386; *Bader v. Dyer,* 106 Iowa, 715; *Killmer v. Wuchner,* 74 Iowa, 359; *Garst v. Brutsche,* 129 Iowa, 501. What we have said also indicates sufficiently our finding that there was nothing in the settlement between the brothers, even on the appellant's own showing, which could bar or estop the appellees from asserting their claim of title in this action.

5. SAME.

III. Concerning the claim of appellant Andrew J. Gullion for improvements, there appears to have been no accounting or showing of the rents and profits received by him. We can not assume that he put more into the land than he took out of it. Moreover, it is only in exceptional cases that a tenant in common can burden the title of his co-tenants by improvements erected or made on his own motion. We

6. COTENANTS: improvement by one tenant.

find nothing here to take the case from the operation of the general rule.

The case is one of a very common type where a son or daughter sets up a claim to more than his or her proportionate share of a deceased parent's estate by virtue of an alleged gift or oral contract of some kind. Such claims are easily made, and, but for the protection given by the statute governing the competency of witnesses, very difficult to defend. For the discovery of the truth, even proximately, reliance must be placed very largely upon indirect or circumstantial proof, and circumstances arise in such infinite variety of phases and combinations that, notwithstanding the great number of cases, no two are ever quite alike, and ordinarily no one of them can safely be accepted as a governing precedent for another. Each must in a large degree rest on its own record, controlled, of course, by reference to general principles. A reading of the entire case now before us impresses us with the belief that the case made by Andrew J. Gullion is largely an afterthought, having its origin since the death of his mother; not that he has consciously sought to wrong or defraud the families of his deceased sister and brother, but that he has persuaded himself he has earned the property and ought to have it. Laboring under such a conviction, it is not difficult for the average human mind and memory to hark back over the years and recall incidents, circumstances, and promises, more or less vague, out of which to construct a plausible case. Much care and discrimination are always required in sifting the testimony produced on either side of such controversies. To do otherwise than to insist that such claims can prevail only when well and clearly established is to endanger every title passing by descent under our statute of inheritance.

We are satisfied that appellants' claims have not been thus sustained by the evidence, and the decree of the district court is therefore *affirmed*.