MARY ETHEL MAY HORNER, Appellee, v. MARY JANE MAXWELL et al., Appellants.

**SPECIFIC PERFORMANCE:** Wills—Agreement to Make—Degree
1  **of Proof.** The proof required to establish an agreement to make a will or to leave property to a certain one must be clear, satisfactory and convincing. Evidence reviewed and held to establish the contract alleged.

**WITNESSES:** Competency—Transaction with Deceased—Agreement
2  to Make Will to Child—Testimony of Mother. The mother of a child is a competent witness to testify to a transaction had by her with deceased persons, in which such deceased persons agreed to adopt and will their property to such child. In such case, the the mother is not a person "from, through or under whom" such child derives any title or interest, within the meaning of Sec. 4604, Code, 1897.

EVANS and SALINGER, JJ., dissent.

**WILLS:** Oral Agreement to Make—Homestead as Affecting Valid-
3  ity. An oral agreement of a husband and wife to will the property possessed by them at the time of their death to a certain child, with no restriction on the right to dispose of any of their property during their lifetime, is not invalid because such agreement might include a homestead.

**EVIDENCE:** "Parol Evidence" Rule—Merger of Prior Oral Con-
4  tract—Agreement to Will—Articles of Adoption. An oral contract to give and to will all of one's property to a child, if the parent of said child will permit the promisor to adopt said child, is not merged in subsequently prepared articles of adoption, drawn in strict compliance with the statute and signed and acknowledged by the parent of the child and the adopting parties, but not recorded by the adopting parents, *said articles containing no provision as to property rights.*

DEEMER, C. J., EVANS and SALINGER, JJ., dissent.

*Appeal from Pottawattamie District Court.*—HON. THOMAS ARTHUR, Judge.

WEDNESDAY, JUNE 30, 1915.

REHEARING DENIED MONDAY, OCTOBER 4, 1915.

ACTION to specifically enforce an alleged contract of Geo. H. and E. May Crisp to leave plaintiff all their property. From a decree entered as prayed, the defendants appeal.— *Affirmed.*

*I. N. Flickinger, Clifford Powell,* and *Tinley, Mitchell & Pryor,* for appellee.

*W. H. Killpack,* for appellants.

LADD, J.—I. The plaintiff is the child of Mollie Clue, born out of wedlock, who became a member of the household of Geo. H. and Elizabeth May Crisp early in 1888. She was first cared for by them at the instance of her mother, and afterwards, on April 17th of that year, articles of adoption in due form were signed by the mother and the Crisps. Therein the mother yielded the custody of her child and the Crisps undertook to adopt her as their own in accordance with the statutes of Iowa, and agreed that they would "nurture, support and educate her as their own child and in all and every respect take the place of parents, both natural and legal." The child was reared by them, though the articles of adoption never became effective, owing to omission to record, and now brings this action to recover the estate they left, on the ground that they orally agreed that she should be entitled to and become the owner of all of the property of whatsoever kind of which they should die possessed. The record is quite clear that Mr. and Mrs. Crisp declared that they had no children and expected none, and that all their property should go to Ethel, the plaintiff. The natural mother, who since married one Armstrong, testified that she first left the child with the Crisps to be boarded for a compensation, and shortly afterwards advised them that she could not pay as

1. SPECIFIC PER-
FORMANCE:
wills: agree-
ment to make:
degree of
proof.

much as was required and would have to change boarding place, whereupon they replied that, rather than give her up, they would keep and adopt her; that she objected to this at first, when they assured her that they would give her a home as though she were their own, and when they died would leave her everything they had; that they had no children and never expected to have any; that she hesitated about parting with her child, and they insisted and repeated their assurance, and that finally the articles were prepared and she supposed the contract in reference to willing the property was included therein, these being given to the Crisps; that Mrs. Crisp objected to recording the instrument for that she did not wish her folks in the east to know anything about the adoption, but wished it to appear that the child was their own, ''so that when they died she would have no trouble in getting their property.'' A. T. Flickinger testified that he prepared the articles of adoption and, after these were signed, advised that it was necessary to record the same; that what he did was in the interest of both parties without employment as an attorney; that previous to the execution thereof, the Crisps said they had no children and that all their property should go to Ethel; that they would make a will and leave all their property to her if the mother would consent to the adoption, and that she consented thereto. At that time, Miss Clue was a domestic in his home and continued as such for several years afterwards. Mrs. Stork testified that Mrs. Crisp, after her husband's death, said to her that the understanding between her husband and herself was ''that Ethel (plaintiff) was to have everything they had when they died. If he died first, then she was going to carry out his wishes to the very best of her ability.'' This evidence was uncontradicted save by that of the defendant, a sister of Crisp, who was visiting in the home of the Crisps for several months about the time of the adoption and heard no conversation about their intentions with reference to the disposition of the property, and the further fact that Mrs. Crisp, shortly before

her death, executed a will leaving to plaintiff $5 and all the remainder of her property to the defendant, and a further circumstance that Crisp, prior to his death, willed all of his said property to his wife. But Mrs. Crisp had executed a previous will in 1902, leaving her property to the plaintiff. The adoption papers were never recorded.

The evidence disclosed that the relations between Mrs. Crisp and plaintiff were always affectionate, but that the former grieved over the latter's marriage, which happened shortly before the last will, was executed, and insisted that she had lost her baby. The significance of one of these wills about offsets that which should be accorded the other, and the will of Geo. H. Crisp, leaving all to his wife, is not inconsistent with the alleged promise that when they (both) died, all should go to the child. The court did not err in finding the alleged oral agreement established with that degree of certainty which the law exacts. See *Stiles v. Breed,* 151 Iowa 86; *Finger v. Anken,* 154 Iowa 507.

II. The competency of the mother as a witness was challenged because of Sec. 4604 of the Code, declaring that "No party to any action or proceeding, . . . nor any person from, through or under whom any such

2. WITNESSES: competency: transaction with deceased: agreement to make will to child: testimony of mother.

party or interested person derives any interest or title by assignment or otherwise . . . shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the commencement of such examination deceased . . . against . . ." any "legatee, devisee . . . of such deceased person." In the transaction of which she testified, she did not purport to act as agent for her child; she seemed rather to be making a gift of her daughter *inter vivos.* She is not seeking to enforce the contract then made, though her testimony and that of plaintiff establishes its complete performance on their part. The fact that she might profit by her testimony ought not to exclude it. Neither the estate in dis-

pute nor the interest therein sought to be recovered by plaintiff was derived from, through, or under the mother, for she never had or claimed any right, title or interest therein. "From, through or under" has reference to the devolution of title, and not the agencies by which this was effected. In *Stiles v. Breed*, 151 Iowa 86, the person acting as agent for the father was held competent to testify, and what was there said sufficiently vindicates the ruling that the mother was a competent witness, notwithstanding the objection interposed. It has the support of *Crawford v. Wilson*, 139 Ga. 654 (44 L. R. A. (N. S.) 773) ; and *Stowers v. Hollis*, 83 Ky. 544. See also *O'Neill v. Wilcox*, 115 Iowa 15, and *Robertson v. Campbell*, 168 Iowa 47. In *Rosseau v. Rouss*, 180 N. Y. 116 (72 N. E. 916), the court appears to have confused acquirement by virtue of a contract of a person with deriving title or interest from, through or under such person, and to have construed a statute like that of this state as though it were like that construed in *Asbury v. Hicklin*, (Mo.) 81 S. W. 390.

We are not inclined to add to Sec. 4604 of the Code, though there is a reason for the legislature to amend it so as to exclude the testimony of the mother in a case like this, and that of an agent making a contract for another with a deceased person. In both instances, death having closed the mouth of one of the parties to the transaction, the law might well close the mouth of the other. It has not done so, however, and we are·of the opinion that the mother was competent to testify to the arrangement made with the Crisps.

III. Nor can it be said that the agreement was invalid because of including the homestead of the Crisps. In the first place, there was no evidence that they then had a homestead; and in the second, if they had, there was nothing to prevent them from disposing of it after their death. The alleged contract neither imposed nor purported to impose any limitation upon their free use or disposal of any of their

3. WILLS : oral
agreement to
make : home-
stead as affect-
ing validity.

property at any time during life. *Moline v. Carlson,* (Nebr.) 138 N. W. 721.

IV. Counsel for appellant contend, however, that all that was said prior to and at the time the articles were signed must be deemed merged therein and may not be shown as establishing an independent agreement. That this is the rule with reference to ordinary contracts goes without saying. But this was not such. The statute, Sec. 3250, Code, prescribes who may adopt a child, ''conferring thereby upon it all the rights, privileges and responsibilities which would pertain to it, if born in lawful wedlock to the person adopting.''

4. EVIDENCE: articles of adoption: parol evidence to add to: admissibility.

Sec. 3252, Code: ''Such instrument must also be signed by the person adopting, and be acknowledged by all the parties thereto in the same manner as deeds conveying real estate are acknowledged, and shall be recorded in the recorder's office in the county where the person adopting resides, and be indexed with the name of the parent by adoption, as grantor, and the child as grantee, in its original name, if stated in the instrument.''

''Upon the execution, acknowledgment and filing for record of such instrument, the rights, duties and relations between the parent and child by adoption shall be the same that exist by law between parent and child by lawful birth.'' Sec. 3253, Code.

These statutes prescribe precisely what is essential to accomplish adoption without reference to what other understandings may have been had between the parties. If others there may have been, they have no place in the articles of adoption as such, which aim only to put the minor in the same relation legally to the adoptive parents as though their offspring. Even this is not effected unless the instrument is recorded. *Tyler v. Reynolds,* 53 Iowa 146; *Shearer v. Weaver,* 56 Iowa 578; *Gill v. Sullivan,* 55 Iowa 341; *McCol-*

*lister v. Yard,* 90 Iowa 621. But as a parent may confer on another the legal right to the custody of his minor child, although adoption is not accomplished, adoption papers, though not recorded or somewhat defective, may prove effective for some purposes and are not to be regarded as entirely void. *Miller v. Miller,* 123 Iowa 165'; *Fouts v. Pierce,* 64 Iowa 71; *Chehak v. Battles,* 133 Iowa 107.

Here, however, the instrument was prepared in strict conformity with the statute and with a view to recording, and therefore with the sole object of effecting adoption. It was not a contract within the meaning of the term, but the compliance in form with statutory provisions to effect legal adoption in the only manner possible. A writing merely in compliance with the statutes is not a contract, nor do these statutes undertake to authorize or regulate contracts. They are intended rather to give the right of inheritance, which does not arise from contract but from the law. *Jordan v. Abney,* (Tex.) 78 S. W. 486. But this was not effected, owing to the failure to record, and the purpose of executing the instrument was defeated and it rendered nugatory. It did not purport to deal with the property rights of parents, natural or adoptive, or with those of the child, and, aside from evidencing the yielding of its custody, it was of no efficacy whatever. To say, in these circumstances, that what was said at or preceding the drawing of such a paper was merged therein would be forcing the parol rule beyond the reason upon which it is based. It is only when the writing, construed in the light of the purpose for which executed, shows that it was meant to contain the whole bargain between the parties, that extrinsic proof of a distinct and separate oral agreement is held to be inadmissible. *Ingram v. Dailey,* 123 Iowa 188; *Sutton v. Griebel,* 118 Iowa 78; *Murdy v. Skyles,* 101 Iowa 549, 555; *Chicago Tel. Supply Co. v. Marne & Elkhorn Co.,* 134 Iowa 252.

Here the subject-matter of property was not touched in the written instrument, and therein the cause differs from

such cases as *Brantingham v. Huff,* 174 N. Y. 53 (95 Am. St. 545), in which the written agreement specified what the child was to receive upon attaining majority. As the writing before us failed in its purpose to effect adoption, through the neglect of the adoptive parents to record, those claiming under them ought not to be permitted to defeat the child's claim to the property under an independent agreement concerning a subject not touched in that writing. Oral testimony is not ordinarily excluded under like circumstances, nor a party denied the right to establish an oral contract by proof extrinsic of the written agreement. Such written agreement neither evidenced the adoption of plaintiff nor conferred on her the right of inheritance or claim to the property, and therefore did not relate in any way to the subject of the oral agreement. We are of opinion that the oral contract was clearly and fully proven, and that the objections to the evidence were rightly overruled.

The decree is—*Affirmed.*

WEAVER, GAYNOR and PRESTON, JJ., concur.

EVANS, J. (dissenting).—I. I am unable to concur in the majority opinion. I agree that the written instrument failed as an article of adoption because not recorded as required by statute. I agree also that such failure to record would not necessarily defeat all property rights which might otherwise have accrued to the plaintiff. I agree, under the authority of *Chehak v. Battles,* 133 Iowa 107, that, though such written instrument never became effective as an article of adoption, it was yet available to the plaintiff as a written contract and was specifically enforceable as such, as far as it purported to confer property rights. I do not agree that an oral contract can be superimposed upon it or that its terms may be contradicted or enlarged by parol evidence.

In the *Chehak* case, *supra,* the plaintiff was permitted to take under the written instrument the share of property which would have fallen to her if such written instrument

had been properly perfected as an article of adoption by acknowledgment and recording. The plaintiff was held to take not as an heir but under the contract according to its terms. At this point, there is no material distinction between the written instrument involved in the *Chehak* case and the written instrument involved herein. If, in the case before us, the Crisps had died intestate, then, under our holding in the *Chehak* case, the plaintiff herein could have taken the estate under the terms of the written instrument. Both in this case and in the *Chehak* case, however, the written instrument only purported to confer upon the child the same rights of property as if she were the natural child of the parties. No restriction was put upon the right of disposal of their property by the adopting parties in such way as they saw fit. The Crisps did dispose of it by will. The purpose of the parol evidence herein is to override the will and to put the plaintiff upon a higher plane of property rights than a natural child would occupy. To my mind, such parol evidence is clearly incompetent, as tending to vary the written contract. If such parol evidence is admissible in this case, it must logically follow that parol evidence will be admissible in any case of adoption. An article of adoption, though regular in all respects, will be equally subject to addition or diminution by parol evidence. If the failure to acknowledge the instrument in this case rendered the written instrument wholly nugatory, I could readily agree to the position of the majority that it could not then operate to exclude parol evidence. But under the *Chehak* case, it was nugatory only in the sense that it failed to become an article of adoption. It was not wholly nugatory. It was still available as a contract and subject to specific enforcement. If a contract, it was necessarily a contract in writing. If a regular article of adoption is immune from contradiction or variation by parol, it must be on the ground that it is in writing. Its immunity in that respect can be no greater than that of

any other written contract. I think, therefore, that the majority opinion opens a wide door to parol evidence.

II. I think, also, that the mother of plaintiff was incompetent to testify as to the transaction and conversations between herself and the Crisps, under the provisions of Sec. 4604. She was party to the contract sued on. She furnished a substantial part of the consideration in the surrender of the custody of her child. She was also a beneficiary under such contract, in that the burden of the child's support and education was taken from her shoulders. She was therefore interested in the contract at the time it was made. She could have been interested in a suit thereon. The plaintiff was a party to that contract only in an indirect sense. She is permitted to sue upon the contract not because the contract was made with her, but because it was made with her mother and in part for her benefit. I think, therefore, that the mother was incompetent under such section as a person "from, through or under" whom the plaintiff claims. The case presented comes clearly within the spirit of such section, as the majority opinion is inclined to concede by the suggestion of legislative amendment. To my mind, the letter of the present statute is sufficiently comprehensive to cover the point presented. It is only by a restricted construction that the majority opinion holds the statute inapplicable.

DEEMER, C. J.—I agree with EVANS, J., in the first paragraph of his dissent, and with the majority on the second division of the opinion, and consequently vote to reverse.

SALINGER, J.—I concur with EVANS, J., in his dissent.