WILLIAM M. YOUNG et al., Appellants, v. LLOYD McCLAN-
NAHAN et al., Appellees.

**ADOPTION:** Abortive Articles Treated as Contract. A written in-
1 strument (intended as articles of adoption, but abortive because
of failure to record) which provides that the child is given by
the destitute mother and taken by the foster parents with in-

tent to confer on said child "the rights, privileges, and responsibilities which would pertain to said child if born to us (the foster parents) in lawful wedlock," will, upon performance by the child, be enforced *as a contract.* (See Sec. 3252, Code, 1897.)

**EVIDENCE:** Credibility—Testimony Incapable of Direct Contradiction. Testimony which, in the nature of things, is incapable of direct contradiction must be tested:

    1. By its own inherent probability or improbability;

    2. By comparison with the other evidence in the case; and

    3. By the ordinary rules of human conduct under similar circumstances.

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

DECEMBER 15, 1919.

SUIT in partition, resulting in a decree awarding the estate of the decedents to the cross-petitioner, Maude Rooker. The plaintiffs and defendants, other than McNabb and Maude Rooker, appeal.—*Affirmed.*

*Stipp, Perry, Bannister & Starzinger,* for appellants.

*E. S. Thayer, Miller & Wallingford,* and *Oliver H. Miller,* for appellee.

LADD, C. J.—I. William N. McClannahan died on August 22, 1916, and his widow, Maria, on October 28, 1918. Neither left children surviving, and each was seized of certain lands, described in the petition. The plaintiffs and defendants, other than McNabb, Miller, and Maude Rooker, are the heirs of decedents, and are entitled to share in their estates, unless Maude Rooker is entitled thereto. She was born September 26, 1884, shortly after which her father, Franklin Winslow, abandoned his wife and children, Maude and her brother, then three years old, and thereafter never contributed to their care or support. After some correspondence, Mrs. Winslow and decedents entered into a writ-

ten contract, denominated "Deed of Adoption," December 19, 1885, in pursuance of which the child was taken and reared by decedents. The instrument was not recorded until after Maude attained her majority, and, for that reason, did not effect an adoption. *McCollister v. Yard,* 90 Iowa 621. The conditions thereof were fully performed by Maude. That the most affectionate relations existed between her and decedents, and that they desired her to have their property when they were gone, is put beyond cavil by this record. She contends that the "deed of adoption" should be construed to be a contract, and that thereunder she is entitled to the estates of both decedents. The paper, without the caption, reads:

"Know all men by these presents, that I, Mrs. R. E. Winslow, of the county of Guthere and state of Iowa, being the mother of and having the legal right to the care of and custody of the minor female child, Maud, hereinafter more specifically named and described. Do by these presents give and bequeath my said child named Maud, born to me under wedlock on the 26th day of September, A. D. 1884, to William N. McClannahan and Mariah McClannahan, husband and wife, of Polk County and state of Iowa, for the purpose of adoption as their own child, hereby consenting that said child shall hereafter be named Maud McClannahan, all of which I do for the benefit of said child whoes father has abandoned me and said child leaving me without means to suport or educate said child.

"And we, William N. McClannahan and Mariah McClannahan, being citizens and householders of Polk County and state of Iowa, do hereby consent to adopt the minor child Maud, to be hereafter named Maud McClannahan, said child being the daughter of Mrs. R. E. Winslow, conferring hereby upon such child all the right, privilgeses and responsibilities which would pertain to said child if born to us in lawful wedlock.

"In testimony whereof, the parties hereto have affixed their signature on the 19th day of December, A. D. 1885."

The instrument was signed by the decedents and Mrs. Winslow, and left with the former. Had the proposed adoption been rendered effective by recording, the rights, privileges, and responsibilities which pertain to a child born in lawful wedlock would have been conferred on Maude by decedents, and she would have inherited decedents' estates. The instrument was not recorded, and, under former rulings, she may not inherit, as an adopted child, anything from decedents. See *Long v. Hewitt,* 44 Iowa 363; *Tyler v. Reynolds,* 53 Iowa 146; and other like cases.

Her contention is that, by its terms, decedents agreed that she should have all the rights, upon their demise, that she would have had, had she been born to them in lawful wedlock; and we are of opinion that there is no escape from this conclusion. The paper is not like that referred to in *Horner v. Maxwell,* 171 Iowa 660, 666; for it is something more than a mere compliance with the statute. Section 3251 of the Code exacted no more than that Mrs. Winslow, the lawful custodian of the child, and Mr. and Mrs. McClannahan, consent to the adoption in writing, and all three sign the instrument, giving "the names of the parents if known, the name of the child if known, the name of the person adopting it, the place of residence of all if known, the name by which such child is thereafter to be called, and also state that it is given to the person adopting for the purpose of adoption as his own." Nothing in the chapter relating to adoption requires that anything shall be said concerning property rights. If drawn solely with reference to the statutes, such a writing is not regarded as a contract. See *Horner v. Maxwell,* supra. Nor can it be specifically enforced when not recorded, as required by Code Section 3252. *Webb v. McIntosh,* 178 Iowa 156. If, however, the paper undertakes to confer upon the child property

rights, it is to be treated as a contract, and, upon complete performance by the child, will be enforced like other contracts. *Chehak v. Battles,* 133 Iowa 107; *Anderson v. Blakesly,* 155 Iowa 430. In the former of these decisions, Mr. and Mrs. Battles covenanted "that, upon the execution of these presents, that they and each of them accept the rights, duties, and relations of a parent to this child, and shall in all respects be that of a child born to themselves in the state of wedlock, and that the same shall include all rights of inheritance by law;" and the court held that this was an enforcible contract, giving to the child the right of inheritance, precisely as though she were their natural child. In other words, it was held that, though the paper did not become effective as an adoption, it constituted a contract, under the terms of which the child acquired the right to take an inheritable share of the property, as if she were their own child. In the latter decision, *Anderson v. Blakesly,* the paper stipulated that the child "shall be the lawful heir" of the adopting parents, and it was held that she was entitled to share their property as such an heir would. The paper in the case at bar is quite as strong as either of those referred to. Therein, McClannahan and wife stipulate that they "do hereby consent to adopt the minor child, Maud, to be hereafter named Maud McClannahan, said child being the daughter of Mrs. R. E. Winslow, conferring thereby upon such child all the right, privilgeses, and responsibilities which would pertain to said child if born to us in lawful wedlock." This amounted to no more nor less than an agreement to confer "all the right" upon the child which she would have had, had she been begotten of them. They consented to adopt, and then defined what they intended thereby: i. e., to confer "all the right" she would have had, if their own offspring. This mode of expression was not different in meaning than had they directly agreed to confer such right. The circumstance that the language employed was substantial-

ly that of Section 3250 of the Code, defining the consequences
of adoption, strengthens, rather than weakens, this con-
clusion; for there can be no doubt but that, under such defi-
nition, the adopted child is entitled to inheritance, though
Code Section 3253 also so states. The McClannahans,
either negligently or designedly, failed to record the instru-
ment, and thereby prevented the proposed adoption's becom-
ing effective as such. This omission was through no fault
of the mother, who departed this life two years after the
adoption, nor of the child, who was of tender years, and
probably knew nothing of the existence of the paper until
too late to record; and neither the McClannahans nor their
heirs are in a situation to complain if the instrument before
us is construed independently of the statutes of adoption,
and the rights derived thereunder enforced precisely as
though no such statutes existed. Whatever may have been
the original purpose to be effected, through the omission to
record, the instrument never became other than a mere con-
tract between the parties; and, upon performance, the cross-
petitioner became entitled to "all the right" which would
have pertained to her, had she been born to the other par-
ties to the agreement in lawful wedlock. Such a child
would have inherited all their estate, real and personal, and
therefore she is entitled thereto by virtue of the contract.

II.   There is another phase of the case which should
be given attention. The cross-petitioner relied somewhat
on an alleged oral agreement between her father, Franklin
Winslow, and the decedents. There was no
proof of any understanding with Maria
McClannahan, but Winslow testified that, in
1886, he visited the McClannahans at their
home in Mitchellville, for the purpose of
signing the adoption papers; that they were not at the house,
and the weather was bad, and McClannahan suggested that
a little statement be written on a piece of paper, reciting

2. EVIDENCE:
credibility:
testimony in-
capable of di-
rect contradic-
tion.

that the adoption was satisfactory to the witness; that he consented thereto; that this was done; that McClannahan wrote out such a statement, and, after it was signed, said he "would file it away with the adoption papers;" that the substance of the writing was that the witness "signed away all his rights and claims to the child to Mr. and Mrs. McClannahan, and that she was to inherit their property at their death, if they had any;" that Mr. and Mrs. McClannahan only were present. The witness testified further that he left his wife empty-handed, about 10 days after the birth of Maude, with a boy 3 years old; that he never thereafter contributed to either her or their care or support; that his brother raised the boy; that he had been in the grocery business in Des Moines three months; that, prior thereto, he had operated a temp bar and a restaurant; and before that, had traded for a photograph gallery, and, after repairing it, sold it to the person from whom he had obtained it; that he had been a traveling salesman, for about 35 years, 7 years for a powder company, during which time he lived in Galt, Missouri; that he came there from Hastings, Nebraska, where he had been working, off and on, during 15 years for the Singer Sewing Machine Company—not steadily; that he had sold different lines of goods ever since he was 18 years old; that most of his life had been spent on the road as a salesman; that he did not remember where he lived before going to Hastings, Nebraska, other than in Jasper County; that decedents lived in a little house near the center of Mitchellville, when he talked with them; that, shortly after the death of Maria McClannahan, in 1918, upon learning that it was claimed that the adoption papers were not valid, because of not being signed by him, he made an affidavit, reciting that he had visited the home of decedents, and there "did make and execute a paper giving my approval to the same [adoption paper] and gave the same paper to aforesaid W. N. McClannahan, and he was to attach it to the adoption

papers;" that he had always recognized and endorsed the making of the "adoption papers."

Such is the evidence, in substance, relied upon to establish the alleged oral contract between the witness and McClannahan. In the nature of things, there can be no direct contradiction. Of necessity, the witness's story must be tested by its own inherent probability or improbability, by comparison with the other evidence in the case, and by the ordinary rules of human conduct under similar circumstances. *Watson v. Richardson,* 110 Iowa 673; *Holmes v. Connable,* 111 Iowa 298; *Finger v. Anken,* 154 Iowa 507. In the first place, a person who would desert his wife in the condition of this woman, weakened by recent childbirth, without any means of support, and burdened with two helpless children, would not be likely to take the trouble to call on the adopting parents, as he claims to have done; and such improbability is increased by the circumstance that he did not thereafter visit them, though they cared for his child until after her marriage. Though taking the trouble to make a sworn affidavit, and to cause the same to be recorded, he omitted to mention that "she was to inherit their property at their death, if they had any." Though the writing was to be attached to the adoption papers, these were found without it, and it was not produced. The witness fixes the home of the McClannahans as a little house near the center of Mitchellville. In the light of these facts, can it be said that the alleged contract in parol has been established by the evidence of this witness, denounced by appellant's counsel as a wandering derelict? Is it clear, satisfactory, and convincing, as exacted by the authorities? See *Stiles v. Breed,* 151 Iowa 86; *Sharpe v. Wilson,* 181 Iowa 753. We think not, and it does not appear that the trial court so held. The circumstances pointed out, as we think, discredit the witness, and the record, when carefully scrutinized, impresses the mind with the improbability of his

story.  Such evidence ought not to be regarded as clear, satisfactory, or convincing.  Relief is granted on the sole ground that the written instrument entered into by crosspetitioner's mother, after her father had abandoned her, as well as his children, entitled her thereto.—*Affirmed.*

EVANS, PRESTON, and SALINGER, JJ., concur.