HELEN JOHNSON, APPELLANT, V. EVA KERN ET AL., APPELLEES.

FILED NOVEMBER 7, 1928. No. 26243.

*Craft, Edgerton & Fraizer, Beeler, Crosbey & Baskins* and *J. P. Voorhees*, for appellant.

*H. M. Sullivan, T. F. Hamer* and *Halligan, Beatty & Halligan, contra.*

Heard before GOSS, C. J., ROSE, GOOD, THOMPSON and EBERLY, JJ., and REDICK and STALMASTER, District Judges.

PER CURIAM.

Affirmed on authority of *Peterson v. Bauer*, 83 Neb. 405, and *Wiseman v. Guernsey*, 107 Neb. 647.

It appears from the evidence, as an entirety, that neither the articles of adoption nor the contract upon which

plaintiff relies as the foundation of her cause of action was established by proof clear, convincing and satisfactory.

AFFIRMED.

The following opinion on motion for rehearing was filed April 19, 1929. *Judgment affirmed.*

Evidence *held* to support denial of plaintiff's petition.

Heard before GOSS, C. J., GOOD, THOMPSON, EBERLY and DAY, JJ., and HASTINGS and REDICK, District Judges.

EBERLY, J.

Action in equity for a specific performance of an alleged verbal contract by Marinda Hovey, also known as Minnie Kern, that she "would adopt plaintiff as her own child," giving to plaintiff all the rights of inheritance by law, and that plaintiff as the adopted child of Marinda Hovey "should inherit the property of said Marinda Hovey, the same as if she were the daughter of the blood of said Marinda Hovey," and that certain real estate described be decreed to be held in trust for plaintiff on account of such agreement. Defendants joined issue. Trial to the court resulted in a general finding and certain special findings against plaintiff, including a finding that there was no "agreement or obligation on the part of the said Marinda Hovey to, in any manner whatsoever, convey or leave to the plaintiff any portion of the property of which said Marinda Hovey died seised," and that no agreement of any kind, either verbal or written, was established to have ever been made between said Marinda Hovey and any other persons, by which the said Marinda Hovey obligated herself to convey to plaintiff any portion of her estate. From this judgment plaintiff appeals.

At a former hearing by this court a judgment of affirmance was entered. *Johnson v. Kern, ante*, p. 536.

Argument was allowed on a motion for rehearing and we have been favored by additional brief and additional oral argument.

The direct evidence of plaintiff's mother in the record

is to the effect that, on a date not fixed, Marinda Hovey, then ordinarily known as Minnie Kern, in a house of prostitution in Sioux City, Iowa, wherein the mother, Maude McCauley, was then an inmate, and in which the plaintiff, then a little child, was kept, and of which Marinda Hovey was then the proprietress, orally agreed with the plaintiff's mother that plaintiff, then a child of three or more years, should be adopted by her, Marinda Hovey, given a good education, and should be made Marinda Hovey's sole heir; that the next morning in this house of prostitution in the presence of Mrs. Thurston, then the police matron of Sioux City, Iowa, this conversation was repeated in substance, and the plaintiff's mother and Marinda Hovey mutually executed "adoption papers" which Mrs. Thurston had prepared and brought with her; that the mother of plaintiff signed these documents, according to her testimony, without reading the same, but evidently assuming that they were made in accordance with the oral understanding.

These adoption papers, if actually made, were never recorded and there is no evidence in the record which discloses in any manner the terms which these papers actually contained.

The evidence of the mother is also in effect positive and without qualification that all negotiations and conversations between the plaintiff's mother and Marinda Hovey on the subject of the adoption, including the execution of the final and only papers of adoption, took place at one or more of the following places, viz., at the depot in Sioux City, Iowa, and in a "taxi" en route to 301 Pearl street on the night of plaintiff's first arrival at Sioux City, or at 301 Pearl street, the house of prostitution, during a few days immediately following plaintiff's first arrival. The testimony of this witness emphasizes the statement of her reluctance to give up her child and of the sudden evident infatuation of Marinda Hovey for plaintiff and her insistence that plaintiff's mother relinquish her offspring to this proprietress of the house of illfame.

Thus, we have a right claim based on negotiations as-

serted to have been had at a certain though, as to exact date, an indefinite time, and at a certain place, with definite parties present, inspired by particular motives, and for the accomplishment of a definite purpose.

The record contains other evidence offered in behalf of plaintiff, some of which corroborates in part the testimony of the mother of the plaintiff and much of which conflicts at least in material portions with this evidence, in the important particulars of place, motives, purpose and substance.

The evidence in behalf of the defendants, both direct and circumstantial, if believed, fairly tends to refute and is certainly wholly inconsistent with the claims of the plaintiff and with the statements of her witnesses.

In addition to this conflicting evidence there were probate proceedings had in the estate of Marinda Hovey, after the latter's death in the spring of 1904, and also proceedings had in the district court for Woodbury county, at Sioux City, Iowa, relative to the appointment of a guardian for plaintiff immediately following Marinda Hovey's death. Marinda Hovey, at the time of her decease, owned and possessed real and personal estate situated in Woodbury county, Iowa, which plaintiff now claims was then of the value of $50,000 or $60,000. Her husband, Edward C. Hovey, was, upon his own petition, duly appointed administrator of this estate by the district court for Woodbury county, Iowa, and administration was had therein as provided for by the laws of Iowa. In due time the proceedings were completed and Edward C. Hovey, as administrator, filed his final report, which was subscribed by him and sworn to before Joseph W. Hallam, notary public, and which was duly approved by the district court for Woodbury county, Iowa, on April 22, 1905. This final report contains these allegations, among others:

"That the only heirs at law of said Marinda Hovey, deceased, are this administrator (Edward C. Hovey), who was her husband, and Wm. Kern and Marinda Kern, his

wife, who are the father and mother of the said Marinda Hovey, deceased, there being no other heirs.

"That the above named heirs have all agreed among themselves as to the disposition of the proceeds of said estate and the taxes upon the real property have been paid.

"That the personal property has been disposed of and either converted into money or divided among the heirs as agreed to by them, and most of the real estate has been sold under such agreement, and that which has not been sold will be held by said heirs in common, as provided by law."

It appears from the public records of the recorder's office of Woodbury county, Iowa, that the real estate thus inherited by Edward C. Hovey and William Kern and his wife was in 1904 and 1905 conveyed and transferred by warranty deeds. Some of these conveyances were made to third parties, William Kern and wife and Edward C. Hovey, as widower, joining as grantors. At least one of these warranty deeds was a conveyance of an undivided one-half interest in certain real estate described therein made by William Kern and wife to Edward C. Hovey. This deed was executed and acknowledged in the presence of Joseph W. Hallam, as notary public. In the guardianship proceedings the petition signed and sworn to by William Kern before the same Joseph W. Hallam, notary public, on the 20th day of April, 1904, sets forth that "Agnes McCauley" has been abandoned by her parents who are nonresidents of Iowa, and is now in the care and custody of plaintiff, and that "your petitioner states that said minor has no property." The bond given was in the sum of $200 and executed by William Kern and Edward C. Hovey. Under the date of April 22, 1905, there appears a report signed and sworn to by William Kern before Joseph W. Hallam, notary public, which was filed in said proceedings, and avers that "said Agnes McCauley has no property of any kind whatever." Edward C. Hovey was killed in a railway accident May, 1913. Joseph W.

Hallam or J. W. Hallam, as his name also appears, was the personal attorney of Marinda Hovey, and shortly before her death had been consulted and retained by her to bring a divorce action, and from the evidence presumably was well acquainted with her affairs.

It also appears, as admitted in the record, that William Kern, Sr., purchased the Nebraska 800-acre ranch in 1905, paying $6,000 in cash and assuming a mortgage of $2,000, taking the title in his own name. The evidence of the defendants is to the effect that William Kern, Sr., made a preliminary payment of $100 with the purpose of having his sons examine the land thus purchased before completing the transaction. The oral understanding between the father and sons at that time was that, if the land suited the sons, the sons were to break out the sod, farm and cultivate it, make necessary improvements thereon, and pay a share of the income to the father during his lifetime, and, upon his death, should become each the owner of his own share therein.

Without unduly extending this opinion by recital of the evidence, it may be said that the evidence of the defendants, if believed, fairly establishes the making of this oral agreement and substantially complies with the same; thus, for example, in addition to labor performed, Richard Kern, a son of William Kern, Sr., testified that he expended $1,800 in cash in improvements made by him on this land; and, also, the testimony of William Kern, Jr., another son, is that he contributed over $2,000 for the same purpose.

On October 24, 1912, William Kern executed his last will devising the 800-acre ranch, subject to a life estate in his wife, to his children as therein provided. He died October 26, 1912, and during the same year this will was duly admitted to probate.

It also appears that the children of William Kern at the request of their mother conveyed their distributive shares received under that instrument in the real estate of their mother, Marinda Kern. The mother then departed this life at Calloway, Nebraska, on June 27, 1925, leav-

ing a last will and testament bearing date November 10, 1923, which in effect devised the land in controversy to her children, "share and share alike, as tenants in common."

This will of Marinda Kern was duly admitted to probate on the 23d day of July, 1925. The devisees in the will last named constitute the defendants in this case. Plaintiff asserts as against them that the share in the estate of Marinda Hovey to which she was entitled under the terms of the parol agreement before referred to was unlawfully appropriated and converted into money by William Kern, Sr., and his wife, and invested in the real estate in controversy, which constituted, in view of the source of the money invested therein, a trust property to which she is entitled.

It is admitted on behalf of the plaintiff that the adoption papers which were claimed to have been executed for her benefit cannot be produced and were never recorded. It is also to be noted that all of the events referred to in the record relating to the alleged adoption and the oral agreement pursuant to which it was made took place in Iowa; this contract, if ever made, was thus made in Iowa, to be performed in that state, and then related to property which had its situs wholly within the state of Iowa. It is quite obvious therefore that the laws of Iowa are controlling as to all questions of substantive law presented by the record before us, and it may also be said that due proof of the laws of Iowa pertaining to this subject appears in this record.

It further appears that the provisions of the Iowa statute applicable to many of the questions here discussed have been lately construed by the supreme court of that state in *Morris v. Trotter*, 202 Ia. 232. In that case it is said:

"Adoption is statutory. It is not known to the common law. By section 10500, Code of 1924, it is only upon the execution, acknowledgment, and *filing for record of an instrument in writing,* conforming to certain requirements of the preceding sections, that the rights between parent

and child by adoption, including the right of inheritance, shall be the same as between the parents and a child born in lawful wedlock. *Long v. Hewitt,* 44 Ia. 363; *Tyler v. Reynolds,* 53 Ia. 146; *Gill v. Sullivan,* 55 Ia. 341; *Shearer v. Weaver,* 56 Ia. 578; *Bresser v. Saarman,* 112 Ia. 720; *In re Estate of Lamb v. Morrow,* 140 Ia. 89; *Riley v. McKinney,* 167 Ia. 508; *Horner v. Maxwell,* 171 Ia. 660; *Webb v. McIntosh,* 178 Ia. 156; *Young v. McClannahan,* 187 Ia. 1184. See, also, *In re Estate of Taggart,* 190 Cal. 493, 27 A. L. R. 1360; *Fiske v. Lawton,* 124 Minn. 85; *Hood v. McGehee,* 189 Fed. 205."

"In *Webb v. McIntosh, supra,* we said: 'This did not become effective as an adoption, because of the articles being signed by the mayor of an incorporated town, instead of the clerk of courts, as then exacted by section 3251 of the Code; and, as the instrument purports to confer no rights upon the child save as a consequence of her adoption, she is not entitled to specific performance. In other words, the courts will not enforce specific performance of an agreement to adopt. That can only be effected by compliance with the statutes of the state.' The principle so announced is controlling here."

And in the same case that court also declared: "While we have frequently held that adoption may not be accomplished save by an observance of statutory requirements, we have also held that the right to property may be acquired under contractual provisions of a writing that falls short of a statutory instrument of adoption, or even under a parol contract, clearly established, where there had been part performance. *Chehak v. Battles,* 133 Ia. 107; *Stiles v. Breed,* 151 Ia. 86; *Anderson v. Blakesly,* 155 Ia. 430; *Young v. McClannahan,* 187 Ia. 1184; *Daily v. Minnick,* 117 Ia. 563."

It is to be remembered that the evidence offered by plaintiff wholly fails to disclose the terms of the adoption papers which plaintiff claims were executed, and it is conceded that they were never recorded as provided by the Iowa statute. It follows therefore, even if adoption pa-

pers were actually executed as claimed by plaintiff, that fact alone affords her no basis of relief.

On this subject the supreme court of Iowa has further declared the law of that jurisdiction to be that nothing in the chapter relating to adoption requires that anything shall be stated in the adoption papers provided for concerning property rights; that if the instrument of adoption be prepared in strict conformity with the statute, with a view to recording, and with the sole object of effecting adoption, it is not to be considered a contract within the meaning of the term, but rather to be regarded as a compliance in form with statutory provisions. Nor do these statutes undertake to authorize and regulate contracts. They are intended rather to give the right of inheritance which does not arise from contract but from law. *Jordan v. Abney*, 97 Tex. 296. In the instant case, owing to the failure to record, the purpose of executing the instrument was thereby defeated and it rendered nugatory. In view of the fact that the regulation of property rights forms no necessary part of its purpose, the instrument of adoption cannot be specifically enforced when not recorded as required by section 3252 of the Iowa Code. *Webb v. McIntosh*, 178 Ia. 156.

In view of this situation we are relegated in the consideration of this case to the sole controlling question of whether or not the evidence in the record establishes as a fact that plaintiff has "acquired rights of property" under a parol contract, clearly established, and of which there had been a part performance, without reference to and wholly uninfluenced by the alleged execution of adoption papers. The trial court, upon due consideration of the testimony contained in the record, much of which was given before it by witnesses in person held: "That no agreement of any kind either verbal or written in form is shown by the evidence to have ever been made between said Marinda Hovey and any other person by which the said Marinda Hovey obligated herself to convey to the plaintiff any portion of her estate."

A careful consideration of all the evidence in the record convinces us that in its finding the trial court is right, and that the plaintiff has wholly failed to clearly establish the existence of a parol contract upon which she relies, and that the action of the trial court in dismissing her petition should be affirmed. In arriving at this conclusion we have not overlooked the evidence offered by the plaintiff as to the claimed oral statements of William Kern, Sr., as to the source of the money invested by him in the lands in suit and as to the alleged rights of plaintiff therein. It may be conceded that the general rule is that declarations by a party in disparagement of his title to property of which he is then in possession claiming to be the owner or otherwise interested therein are competent evidence, but it is also true that "the weight to be given to evidence of admissions may depend upon various matters affecting its accuracy; as, for example, the liability to mistake what has been said, resulting either from the frailty of human memory, the natural inability to detail what has been said by another precisely as it was said, and the liability to purposely distort, color or mistake what was said," and, "consequently the rule is that evidence of admissions, particularly mere verbal admissions, should be received with caution." 1 Ency. of Evidence, pp. 610, 611; 22 C. J. 289, sec. 318.

Particularly is this true when the declaration testified to is sought to be applied or used in the establishment of a controverted fact as to which it affirmatively appears that the declarant has no personal knowledge. In the instant case the declarations of William Kern, Sr., as testified to by plaintiff's witnesses, are sought to be used as the basis of an inference that the transactions between Marinda Hovey and plaintiff's mother were as testified to by the latter; yet the evidence of plaintiff's mother wholly fails to disclose the presence of William Kern, Sr., at the time and place of the transactions referred to in her testimony; and in no manner connects this declarant with such transactions, and, in fact, the evidence as an entirety

substantially negatives his presence thereat. While these declarations thus testified to are, in view of the declarant's relation to the title involved, admissible in evidence, and might indeed be worthy of serious consideration on the subject of the identification of the funds invested in the Lincoln county land, as funds derived from property inherited by the declarant from Marinda Hovey's estate, that, if true, being a fact which would reasonably be within his personal knowledge, they would seem to be entitled to but little weight so far as tending to establish the actual existence of the parol contract of adoption, as testified to by plaintiff's mother. For it is certain that as to the last named transaction the declarant was not present and could have no personal knowledge thereof whatever, and, in fact, as to which he would not be even a competent witness.

But there is a further and additional element involved in this question. William Kern, Sr., the alleged source of most, if not all, of the admissions upon which plaintiff relies to sustain her case had been dead 15 years at the time of this trial in the district court, and almost 10 years had elapsed since the plaintiff had attained her majority and had been fully advised of the facts of the situation. No concealment in the matter by William Kern, Sr., is claimed. "Courts of justice lend a very unwilling ear to statements of what dead men have said." *Lea v. Polk County Copper Co.*, 21 How. (U. S.) 493. "Unsupported testimony of a single person as to a conversation between himself and a deceased person is regarded as the weakest of all kinds of evidence." *Lippert v. Pacific Sugar Corporation*, 33 Cal. App. 198. Where statements were made in loose, casual or random conversation the supreme court of Iowa has announced the conclusion that: "No species of testimony is more dangerous, or received with greater caution." *Cooper v. Skeel*, 14 Ia. 578, 581. As applicable to the subject of proof of admissions of declarants, Corpus Juris, after a discussion of the obvious weakness of this class of testimony, in general, continues as follows: "Ex-

posed to all the infirmities just mentioned and to the further objection that it is impossible, in most cases, to convict the witness of perjury if his testimony is wilfully false, testimony as to the oral statements of deceased persons is therefore regarded as the weakest kind of evidence and subjected to the closest scrutiny." 22 C. J. 291, sec. 319. In principle our own authorities are in substantial accord with the rule thus expressed. *Overlander v. Ware,* 102 Neb. 216; *Williams v. Miles,* 68 Neb. 463; *Clark v. Turner,* 50 Neb. 290.

In this connection the following circumstances have been judicially noticed as tending to impair the credibility of testimony to oral declarations and admissions: That the alleged testimony is inconsistent with the true facts in the case; that the statement is not in harmony with the conduct of the witness or of the declarant; that the witness was not interested in the subject-matter of the conversation and had no reason for giving special attention to it; that the alleged statement was made in the presence of witness alone; that the statement was made many years before, and that the witness is of bad and doubtful character. 22 C. J. 292, sec. 321.

A careful examination of the record in this case justifies the conclusion that it is quite apparent that one or more of the circumstances above enumerated are found in connection with each item of testimony with reference to the "admissions" of William Kern, Sr., upon which the plaintiff relies in this case. Especially is it true that as to each of these admissions it must be conceded that they are utterly inconsistent and out of harmony with the life history of this deceased as preserved in numerous written records embracing many transactions occurring at widely separated intervals and in varied connections.

Therefore, considering the case a trial *de novo* and giving due attention to all the direct evidence and the facts and circumstances appearing in the record, we are impressed with the thought that plaintiff has failed to substantiate her claim as to the making of the alleged parol

contract between plaintiff's mother and Marinda Hovey, upon which plaintiff's rights must be based; nor can her cause of action, in view of the circumstances detailed in the evidence, be sustained by the admissions of William Kern, Sr., and others upon which the plaintiff relies.

It follows that this court is in full accord with the judgment of the district court denying plaintiff relief and directing the dismissal of her petition, which action is therefore hereby

AFFIRMED.

HASTINGS, District Judge, dissents.