Annis Ashby Harris, Appellant, v. William Randolph et al., Appellees.

No. 40625.

APRIL 10, 1931.

REHEARING DENIED DECEMBER 17, 1931.

Hughes, O'Brien & Faville and Graham & Graham, for appellant.

Swan, Martin & Martin and Theodore Mantz, for appellees.

MORLING, J.—Plaintiff claims title as the sole heir of her mother, Lois A. Ashby. Appellees allege that Lois A. Ashby died leaving a will, the tenth paragraph of which is as follows:

"Tenth. I give, devise and bequeath, in trust, to John Weighton and his successors as trustee, for the uses and purposes and upon the conditions hereinafter set forth *all of the real estate situated in* Audubon county, Iowa, except my homestead, if any, of which I may die seized and possessed. Said Trustee and his successors may, in their absolute discretion from time to time, during the life of my daughter Annis Eleanor Ashby, pay over all or any part of the income of said real estate and the investments thereof, unto my daughter; or, at their absolute discretion may apply the same for the maintenance and personal support of my said daughter, or her husband, if any,

or her children, if any for the time being, in such proportions and in such manner as my trustee shall, in his absolute discretion, from time to time think proper, and at the death of my said daughter I give, devise and bequeath, said trust real estate and all unexpended income therefrom to the descendants of my said daughter then living, in equal shares, per stirpes; in the event my said daughter shall die without leaving descendants living at her death, then, in that event, I give, devise and bequeath said trust real estate and the unexpended income therefrom then in the hands of my trustee, in equal shares to Thelma K. Weighton and Thora Lenora Weighton and D. W. Randolph, if living, and in the event either Thelma K. Weighton or Thora Lenora Weighton is dead leaving descendants her descendants shall take the share of such deceased one, share and share alike, per stirpes, if either Thelma K. Weighton or Thora Lenora Weighton are dead without descendants or D. W. Randolph is dead, the share of such deceased one or ones shall be divided equally between the others of said Thelma K. Weighton, Thora Lenora Weighton and D. W. Randolph, the survivor or survivors of the said three persons, in this event, to take all of said trust property, if Thelma K. Weighton and Thora Lenora Weighton are dead without descendants and D. W. Randolph is also dead, then, in that event, I give, devise and bequeath said trust real estate and all unexpended income therefrom to the descendants of said D. W. Randolph, share and share alike per stirpes.

"The trustee of this trust shall keep the buildings on said real estate adequately insured against loss by fire and other causes; shall keep all buildings and improvements of every kind in good repair; and may make such additional improvements as they deem proper and necessary; pay all taxes and assessments against said real estate and this trust; rent said land and receive the rents, issues and profits therefrom and invest the income therefrom as they may think proper while the same is not in their absolute discretion needed to pay upon the uses of this trust; and do every and all things necessary to carry out this trust and its purposes."

Defendant William Randolph is the son of D. W. Randolph named in the foregoing bequest. Defendant Jack Randolph is

a son of William and grandson of D. W. Randolph. D. W. Randolph is still living.

An order was entered January 4, 1924, admitting this will to probate. E. S. Van Gorder was substituted as trustee in the place of John Weighton. Thereafter plaintiff brought action against John Weighton, Thora Lenora Weighton, Thelma K. Weighton, D. W. Randolph and E. S. Van Gorder as trustee to set aside the probate and to cancel the will. That action was based on the allegation that no sufficient notice of application for probate was given, that the testratrix was mentally incompetent and the will the product of undue influence. D. W. Randolph was served with original notice but made no defense. John Weighton, Thora Lenora Weighton and Thelma K. Weighton and E. S. Van Gorder, trustee, were served and filed answers, the trustee Van Gorder answering separately. Before answering the trustee Van Gorder had made application to the court for instructions as to his duties and "if his defense should be other than nominal that the court authorize the employment of counsel." The court directed the trustee Van Gorder to "make a bona fide defense to said cause of action and to defend the same in good faith" and authorized him to employ counsel. The court also ordered the plaintiff "to bring in all necessary parties, to wit: children and grandchildren of defendant, D. W. Randolph, and all legatees under will of Lois A. Ashby, deceased." Pursuant to the latter order plaintiff amended her petition naming some 27 additional parties defendant, evidently children and grandchildren of D. W. Randolph, including the defendants William Randolph and Mary Randolph. The existence of defendant Jack Randolph, a small child, seems to have been unknown, so he was not made a party. Original notices were issued and apparently served upon all of the additional defendants except William Randolph and Mary Randolph. A large number were minors. These were duly served with original notice and answered by guardian ad litem. All the answers took issue upon all the plaintiff's alleged grounds of contest of the will. The action went to trial before a jury on the issues thus raised. Some 21 witnesses were examined in behalf of plaintiff and 12 in behalf of the defendants. After several days spent in the trial before the jury the parties by agreement waived the jury, which was discharged, submitted the case

776

to the court "with the agreement that the court having heard all the evidence in the trial of the cause may and should consider the same as though all of said evidence and testimony was taken before the court and that the court may render judgment in said cause on said evidence and testimony the same as though the jury had been waived in the first instance." It was stipulated that out of the funds belonging to the trust the trustee should pay Thora Lenora Weighton and Thelma K. Weighton each the sum of $6,000, to S. C. Kerberg for services rendered the estate as attorney $2,000; that they should withdraw their appearances and the case should be heard and determined by the court on the testimony. It was further agreed that no further testimony should be offered by defendants "in the case at bar, No. 10002 by the defendants, and the court shall base his judgment and decree and findings upon the testimony now before the court;" that Thora Lenora Weighton and Thelma K. Weighton should convey all of their interest to the plaintiff. D. W. Randolph acknowledged complete satisfaction of all his rights under the will. It was further agreed that all legacies paid under the will were valid claims in favor of the legatees and their payment should be approved by the court. Each party waived the right to appeal. This agreement was made between the plaintiff and D. W. Randolph, E. S. Van Gorder, trustee, Thora Lenora Weighton and Thelma K. Weighton. The cause was submitted to the court without further evidence and the court found that Thora Lenora and Thelma K. Weighton having conveyed all their interests to the plaintiff had no further right in the suit. The court approved the legacies that had been paid, including one to D. W. Randolph for $2500, found that the instrument purporting to be the will of Lois A. Ashby was not her last will and testament, adjudged that it be cancelled and that Lois A. Ashby had died intestate; that plaintiff was her sole heir at law. Plaintiff was at the time of the trial 20 years old and married. It seems to have been assumed at the trial that neither plaintiff nor Thelma nor Thora had descendants.

The nature of the proceeding to set aside the probate of the will and to cancel the will, or the question of who are necessary parties to such a proceeding, is not discussed. The plaintiff's contention is: 1. That the appellees were represented in the former litigation by the trustee. 2. If not they were represent-

ed by the other parties who were before the court. 3. That a good faith defense was made by both the trustee and the other answering defendants and that appellees are concluded by the judgment through the doctrine of representation. The quality of the interest of the appellees under the will is not debated further than that plaintiff contends that they "had only a very remote, contingent interest in the property. It depended (1) upon the death of appellant; (2) her death without issue; (3) the death of Thelma K. Weighton prior to the death of D. W. Randolph; (4) the death of Thora Lenora Weighton prior to the death of D. W. Randolph; (5) the death of Thelma K. Weighton without children; (6) the death of Thora Lenora Weighton without children; (7) the death of D. W. Randolph during the lifetime of appellees; and (8) the death of any adopted children."

Without discussing whether all of these, or these and other contingencies must occur in the lifetime of the appellees, or at least in the lifetime of one of them, before any interest would vest in either, it is sufficient to say that manifestly appellees' interests would be contingent and very remote.

The appellees, of course, claim nothing from the possibility of after-born children to plaintiff or to Thelma or Thora.

The gift immediately in possession was to the trustee. We assume, without deciding, that inasmuch as the estate of the trustee in equity is only that required for the execution of the trust (Keck v. McKinstry, 206 Iowa 1121), and as plaintiff was the cestui que trust and her estate in the trust was for life only the trustee took only an estate for plaintiff's life and not in fee. The first estate of inheritance on this assumption would be in the plaintiff's descendants, if any. She has no descendants. Next the estate of inheritance was given to Thelma, Thora and D. W. Randolph, if living. They were all living during the entire pendency of the action. If plaintiff had died during the pendency of the former action (she having no descendants) these three—Thelma K. Weighton, Thora Lenora Weighton and D. W. Randolph—would have taken in possession an unqualified estate in fee simple. Thereby all the remoter interests given by the will contingent on their deaths, including the interest given to the appellees, would have been extinguished. Archer v. Jacobs, 125 Iowa 467. These were made parties to the former

suit. They, and the remainder in them were bound by the judgment. The will as to them was extinguished by the judgment and the remainder which then if the will had been sustained would have vested in Thelma, Thora and D. W. Randolph was extinguished. Id. The remote contingent interests of the appellees unless they were necessary and nominal parties to the suit were likewise extinguished. Id.

The question arises then whether the judgment cancelling the will is conclusive on appellees inasmuch as by reason of non-service upon them they were not nominally or formally parties to the action. The general rule is that all persons whose interests may be adversely affected by the judgment should be made parties to an action to determine title. The rule has its exceptions, one of which is known as the doctrine of representation. We have applied this doctrine to the case of unborn remaindermen. Buchan v. German American Land Co., 180 Iowa 911. The application of the doctrine is not however limited to unborn remaindermen. Generally in the case of expectant interests in realty if those having the first vested estate of inheritance are before the court the judgment is conclusive upon those having remote and contingent interests which depend on the termination of the prior vested estate of inheritance before it takes effect in possession. 34 C. J. 1000. This rule is especially applicable to the case of a contingent interest represented by a member of the same class who is brought before the court and who makes bona fide defense by presenting the interest on the entire merits of the controversy.

The question here is not whether the plaintiff has a marketable title. As stated, the estate in fee is first given to plaintiff's descendants, if any. Appellees cannot claim under such descendants should plaintiff have them. In Mennig v. Graves, 211 Iowa 758, the question presented was one of marketable title because of the total absence from the action, claimed to have settled the title, of anyone representing the interests of possible unborn remaindermen to whom the remainder in the first instance was given. It may be that in the case now before us the plaintiff as to her possible future children, as in Mennig v. Graves, has not a marketable title. If so that fact has no bearing on the validity of the judgment as against appellees. The appellees obtain nothing until plaintiff dies; unless she dies

without descendants; unless appellees are then living and unless Thelma, Thora and D. W. Randolph, or one of them, are under hypothetical circumstances dead without descendants. Whether plaintiff has a marketable title as against possible unborn descendants of Thelma or Thora is a question not before us. The expectant interest of the appellees depends upon the validity of the will. So did the expectant interests of the trustee, of Thelma, Thora and D. W. Randolph, of the other children and grandchildren of D. W. Randolph who were made parties. Some of this latter class who were nominally made parties and defended were members of the identical class to which appellees belonged, and presented in their defense not only the common claim that the will was valid, but presented identically the same interest under the will that appellees now claim.

As the question of the necessity of representation of plaintiff's possible afterborn descendants and the marketability of her title must be excluded from consideration the case reduces itself to the question whether it was necessary to make appellees nominally parties to the former action, or whether they (not others who are not defending) are bound on the principle of representation.

We are of the opinion that in order to cut off expectancies so remote as those claimed by appellees it was not necessary (there being no fraud) to make them nominally parties to the will contest.

It is said in Mead v. Mitchell, 17 N. Y. 210, 72 Am. Dec. 455, 457:

"In the English Court of Chancery the general rule is that in actions affecting the title to land it is sufficient to bring before the court the person entitled to the first estate of inheritance with those claiming prior interests, omitting those who might claim in remainder or reversion after such vested estate of inheritance (Calv. on Parties 48; Mitf. Pleadings 173). A decree against the person having the first estate of inheritance would bind those in remainder or reversion, although the estate might afterwards vest in possession. Indeed, it was improper to make parties thus remotely interested parties to the action, and thus put them to the trouble of litigating a matter in which they might never have any interest. It was a rule, therefore, which had been adopted, as it was said, partly from necessity and partly

on considerations of convenience. (Calv., 51; 2 Spence Eq. Jur. 707; Story Eq. Pl., sec. 144).''

It is said in Faulkner v. Davis, 18 Grattan (Va.) 651, 98 Am. Dec. 698, 719:

''It is certainly a general rule in regard to suits in equity, that 'all persons having an interest in the object of the suit, ought to be made parties.' Calvert on Parties to Suits in Equity, p. 11. 'It is a rule,' says that author, 'founded upon the advantage which all persons interested will derive from the completeness of the decree, and from the entire settlement of a matter in litigation; in other words, it is founded upon *convenience,* and the same principle guides our courts of equity in their mode of putting the rule into operation, as they never allow it to produce any inconvenience which can safely be avoided. With this view, they have adopted the principle of representation.' Id., p. 19. * * * He then says: 'Another kind of representation admitted in the practice of courts of equity, is the representation of all persons having interest in real property, subsequent to the first estate of inheritance, and liable to be defeated by a recovery. This representation takes place in the person entitled to the first estate of inheritance. The rule is firmly established, and the principle and extent of it may be extracted from the following *dicta,'*—which he proceeds to quote from what Lord Eldon says in Lloyd v. Johnes, 9 Ves. R. 37, and Lord Northington says in Pelham v. Gregory, 1 Eden. R. 520; and then says: 'From these passages, it appears that the modification of the general rule has been adopted on grounds partly of necessity, partly of convenience, and upon a principle of justice to persons entitled to remote interests, that they may not be exposed to any vexations which the caprice or self-interest of those who actually enjoy or wish to claim a property might chance to produce. Another important principle in favor of this doctrine is, that in the person of the first tenant in tail there is brought before the court one, whose interest is of such a nature as to insure his giving a fair trial to the legal right. This last principle seems to have established the limit to the number of interests which may be represented by the person entitled to the first estate of inheritance. Such interests may be described in different terms; they are interests which depend

upon that first estate; which, together with that estate, make up the fee simple; those which come within the definition of a remainder, viz: ''a residue of an estate in land depending upon a particular estate, and created together with the same;'' they are interests which the tenant in tail can destroy, and which, for that very reason there is peculiar propriety in empowering him to defend.' Id. 50. 'This kind of representation,' he further says, 'has even been carried further: it has been said by Lord Redesdale, that 'it is sufficient to bring before the court the first tenant in tail in being; and if there be no tenant in tail in being, the first person entitled to the inheritance; and if no such person, then the tenant for life. Many of the same principles which justified the court in proceeding when only the first tenant in tail was present, may be used in justification of this further step. There is in both cases the same necessity, the same convenience, and on the part of persons remotely entitled, the same liability to the vexatious litigation of the present possessors of the property.' Id. 51. After quoting from what Lord Redesdale says in Giffard v. Hort, 1 Sch. & Lef. R. 409, the author proceeds: 'The general principle of representation established in these cases may be thus expressed: ''In respect to the first estate of inheritance, and of all interests depending upon it, it is sufficient to bring before the court the person entitled to that first estate; and if there be no such person, then the tenant for life.'' ' * * * The author then proceeds to show how 'courts of equity, having adopted the principle of representation, work it out by treating the persons represented as if they had been parties present;' (Id. 54) the object of the court in dealing with rights of this kind being 'to settle them forever.' Id. 59. The first section of the first chapter of the author's work treats of the general rule in regard to parties, before referred to. The second section treats of the 'doctrine of representation' as a modification or qualification of that rule. And the third section treats of 'exceptions to the general rule.' This last section he thus commences: ''The several kinds of representation which have been enumerated cannot properly be termed exceptions to the general rule; they are merely the modes, in which, for the sake of convenience, the court allows the several interests to be protected, with a view to make a complete decree.' Id. 64.''

In Miller v. Texas & Pac. Ry. Co., 132 U. S. 662, 671, it is said:

"In the present case the executor was a defendant in the proceedings instituted for avoiding the will, and appeared and filed an answer; and the infant son of Rutledge, who was devisee in fee of the whole estate after the termination of his mother's interest, was represented in the proceedings by a guardian *ad litem*. Moreover, if the circumstance is of any consequence, the executor was interested on behalf of his own children that the will should stand,—as they were the principal devisees in remainder. We think that the Supreme Court of Texas was right in holding that all the necessary parties were before the court. We are also of opinion that the decree avoiding the will cannot be attacked collaterally; and that it is binding on the appellants, Thomas H. Miller and others. The entire estate was represented before the court,—a particular estate in the widow, and the fee simple remainder in the infant son. The interest of the appellants, Thomas H. Miller and others, as devisees under the will, was a mere contingent interest, a mere executory devise. In such a case it is sufficient to bind the estate in judicial proceedings to have before the court those in whom the present estate of inheritance is vested."

Longworth v. Duff, 297 Ill. 479, 130 N. E. 690; Naylor v. McRuer, 154 S. W. 772, 248 Mo. 423; Bransford Realty Co. v. Andrews, 164 S. W. 1175; 128 Tenn. 725; 34 C. J. 1000, 1014; Hines v. Hines, 147 S. W. 774, 243 Mo. 480; Bearss v. Corbett, 158 N. E. (Ind.) 299.

Appellees contend that their interests were not represented in any bona fide defense made. As has been stated the question at issue in the former action and in this action is not the relative quality or quantity of the interest of the defendants or of the other parties but whether there was any will at all and whether any beneficiary named in it took any interest whatever under it. The defendants in that action to sustain any interest in the land were compelled to sustain the will. D. W. Randolph made no defense. In fact he assisted the plaintiff. The trustee, however, did make defense. Thelma and Thora made defense. The numerous children and grandchildren of D. W. Randolph (except Jack) were made parties and except appellees and Mary

were served with original notice. Guardian ad litem was appointed for those that were minors and he made defense for them. These minors were in the identical position that the present appellees would have been in had appellees been served and defended.

Appellees argue that the case was not fully tried but settlement was made with those defending whereby they obtained benefits while appellees got nothing. It does not appear that the defendants in the former action had any other evidence or that they had not fully presented and honestly tried their case. After the stipulation with the other answering defendants the minors and their case were still before the court. The defense for them was not abandoned. The case had been on trial for a number of days. The testimony of many witnesses had been introduced. There was no reservation in the submission, nor any attempted restriction upon the authority of the court to decide the entire case upon the merits. On the face of the record the cause was fully tried, submitted and determined. It was the duty of the court to protect the interest of the minors and it is presumed that the court did so. Bearss v. Corbett, 158 N. E. (Ind.) 299, 308. Fraud or bad faith must be proved. It may not be presumed. There was no concealment of the pendency of the action. William Randolph knew of its pendency.

The law favors settlements. The stipulation contains mutual, and, so far as appears, reasonable concessions. The parties did not concede the invalidity of the will or attempt to bargain away any rights of those who were not parties to the stipulation. The withdrawal of the jury, the concessions made, the full submission of the cause to the court on the evidence before it cannot be presumed to have been in bad faith. The value of the property held in trust was over $150,000. It may well be that the plaintiff's case was strong yet that reasonable regard to the moral claims of proponents justified the concessions that were made. The decision was on the merits. It may not be presumed that the court did not fully and fairly consider all of the evidence or determine the cause according to the very right of it. It must be held upon this record that the defense made in the action to set aside the will and its probate was made in good faith and that the question of the validity of the will was fully and fairly tried and determined.

784

■ Appellees further argue that the court having ordered that they be made parties and plaintiff having amended by making William and Mary parties, plaintiff cannot be heard to claim that they were not necessary parties. The matter of joinder and nonjoinder was one of procedure in the former action to be determined therein. If the court had jurisdiction and authority to make a final determination of the matter at issue conclusive upon all parties interested it did not lose that jurisdiction or authority by making a superfluous order for the bringing in of other parties or by later ignoring such order. The order was merely interlocutory. Any irregularity in respect to it or its observance was an irregularity in that action and would have to be there corrected by proper proceedings taken by the parties to the action. Strangers to the action, in the absence of fraud or estoppel, can not complain. The validity and consequences of the judgment rendered in the action cannot be affected by a mere irregularity.

It is the opinion of the Court that the judgment in the former action is conclusive of the invalidity of the will and conclusive against any possibility of interest in the appellees to the land in question thereunder. Appellees having no other claim to the premises in controversy the plaintiff's title should have been quieted against them.—Reversed.

EVANS, STEVENS, ALBERT, GRIMM, KINDIG, and WAGNER, JJ., concur.

FAVILLE, C. J., not participating.