IN RE ESTATE OF THOMAS R. FELLE.

JAKE JACKSON et al., Appellants, v. EMMA TORGERSON et al., Appellees.

No. 46883.

JULY 29, 1946.

REHEARING DENIED OCTOBER 15, 1946.

W. Lawrence Oliver, of Des Moines, for appellants.

L. A. Moe, of Mason City, for appellees.

OLIVER, J.—This is a contest between two groups of alleged heirs at law of Thomas R. Felle, who died intestate in 1943, leaving an estate valued at less than $7,500. Each group claims the right to inherit said estate. Thomas was unmarried and without issue, had no brother nor sister, and left no sur-

viving father nor mother. He had been born out of wedlock about 1891. Ten months later his natural mother died and he was taken to the home of Osmund Olsen Felle and his wife, Susane O. Felle, by whom he was reared under the name of Thomas R. Felle. Osmund died in 1921 and Susane in 1922, leaving no surviving lawful issue.

The administrator of Thomas' estate, reporting that Mary Torgerson, who died about 1891, was Thomas' natural mother, and that his natural father was unknown, listed Mary's surviving brothers, sisters, etc., as his heirs at law. For convenience this group of alleged heirs will be hereinafter referred to as the Torgersons.

Subsequently the administrator instituted proceedings to sell decedent's real estate. Three sons of John Jackson, deceased, intervened in the proceedings, alleging they were entitled to the estate. John Jackson was the brother of Susane O. Felle. The Jacksons contend the mother of Thomas R. Felle was unknown, and that Osmund Olsen Felle was the natural father of Thomas and would have inherited Thomas' entire estate had he survived Thomas. From Osmund the Jacksons trace their claim through Osmund's lawful wife, Susane, and from her through her brother, their deceased father.

The parties stipulated that the action be tried in equity. The trial court found Mary Torgerson was decedent's natural mother and Osmund Olsen Felle was not his natural father. Judgment was rendered dismissing the petition of intervention of the Jacksons and establishing the heirship of the Torgersons. The Jacksons have appealed.

The Jacksons testified that about 1892 (when they were children) they overheard conversations between Osmund and Susane Felle in which Susane told Osmund she did not want the boy Thomas and Osmund told her Thomas was his boy and he wanted him. They also testified that for about six months after Thomas was brought to the Felle home Susane did not take care of him and Osmund cared for him. The Jacksons admitted they never heard anyone in the neighborhood make any remarks relative to relationship between Osmund and Thomas. One of the Jacksons admitted Mary Torgerson was supposed to be the mother of Thomas and that there was

an allegation in some papers filed for the Jacksons that they did not know who was the natural father of Thomas. It is undisputed that Osmund and Susane called Thomas "son" and he called them "dad" and "mother."

For the Torgersons, a witness testified her father, Ole Rusley, was Mary's uncle; that Mary came to this country from Norway and lived in the neighborhood with the Talle Rusleys, another uncle and aunt; that Mary frequently came to the home of the witness; that the witness, then a child, knew of Mary's pregnancy and the birth of her illegitimate son; that Mary and the boy stayed at the Talle Rusleys until Mary's death ten months later; that the father of the witness had the baby baptized and gave it to the Felles; that when he returned home he said, "He was so tickled he got to leave it there because he knew them;" that she never heard it said by anyone in the family that Osmund was the father of the boy; that the family and relatives understood one George Anderson to be such father. The record shows bastardy proceedings brought by Mary against George Anderson and a trial resulting in the dismissal thereof.

Another witness testified Mary was her sister; that Mary had been buried in a Winnebago county church cemetery but her body was subsequently moved to the Rusley lot at St. Ansgar; that she saw Thomas Felle after he was grown and sent him some candy during World War I; that he called her "aunty"; and that Mary Torgerson was his mother. There was also evidence of the relationship of the respective Torgerson claimants to Mary Torgerson.

In 1921 a written contract was made between Osmund and Susane, as parties of the first part, and "Thomas R. Felle, the adopted son of said first parties, as party of the second part," reciting that, "The second party since he was of the age of eight or ten months has been as a son to the parties of the first part although no legal adoption papers were executed for him"; that Thomas wishes to provide for the care and maintenance of first parties, who have become aged and infirm; that the first parties have conveyed their farm to Thomas and that he shall care for and support them during

their natural lives, furnishing them proper care "such as a son should furnish to his parents," and agreeing "to at all times treat his said father and mother as a son should treat his parents." This contract was recorded. Apparently Thomas performed his part of the contract until the deaths of Osmund and Susane shortly thereafter.

Sections 636.32 and 636.40, Code of Iowa, 1946 (sections 12017 and 12025, Code of 1939), provide that if an intestate leaves no issue his net estate to the amount of $7,500 shall go to the surviving spouse. If no spouse, the whole estate shall go to the parents. If both parents are dead their share shall be disposed of in the same manner as if they had outlived the intestate and died in the possession and ownership of such portion.

Section 636.45, Code of 1946 (section 12030, Code of 1939), provides:

"Illegitimate children inherit from their mother, and she from them."

Section 636.46, Code of 1946 (section 12031, Code of 1939), provides:

"They shall inherit from the father when * * * they have been recognized by him as his children; but such recognition must have been general and notorious, or else in writing. Under such circumstances, if the recognition has been mutual, the father may inherit from his illegitimate children."

There is no showing of the general and notorious recognition by Osmund of Thomas as his son, required by the statute. Pike v. Standage, 187 Iowa 1152, 175 N. W. 12; Trier v. Singmaster, 184 Iowa 307, 167 N. W. 538; Johnson v. Moore, 184 Iowa 648, 169 N. W. 47; In re Estate of Clark, 228 Iowa 75, 107–112, 290 N. W. 13. The only evidence of a public declaration of Osmund or Thomas is in their recorded contract which explains the status of the parties and states in substance that Thomas was merely the foster son of Osmund and Susane. The entire record persuades us that the trial court properly found Osmund was not the natural father of Thomas. We need not determine the right of inheritance of the Jacksons,

if any, had they established, relationship and recognition between Osmund and Thomas.

We concur also in the finding of the trial court that Mary Torgerson was the mother of Thomas. Upon this point the principal complaint of the Jacksons is that the evidence was in part hearsay. Evidence relating to pedigree and genealogy and family history is usually largely hearsay and presents an exception to the general rule on that subject. Declarations in the family are admitted upon the principle that they are the natural effusions of a party who must know the truth and who speaks upon an occasion when his mind stands in an even position, without any temptation to vary from the truth. In re Estate of Corbin, 235 Iowa 654, 17 N. W. 2d 417; In re Estate of Clark, supra, 228 Iowa 75, 97, 98, 290 N. W. 13; Alston v. Alston, 114 Iowa 29, 86 N. W. 55; In re Estate of Frey, 207 Iowa 1229, 224 N. W. 597. The questioned evidence was competent under the foregoing exception.

That the Torgersons are the heirs at law of Mary is not seriously disputed. Hence the judgment awarding them the estate was proper.—Affirmed.

All JUSTICES concur.