IN RE ESTATE OF ZANETTE CONNER.

No. 47213.

(Reported in 36 N. W. 2d 833)

. . . Bailey C. Webber, of Ottumwa, and C. J. Lambert, of Sigourney, for John Herman, Elvin E. Herman and Ernest A. Herman, appellants.

W. H. Hamilton, of Sigourney, for C. G. Updegraff, as executor of Zanette Conner estate, appellee.

Jones & White, of Ottumwa, for Ellis C. Conner, appellee.

Oliver, J.—A rehearing having been granted the former opinion reported in 33 N. W. 2d 866 is withdrawn and this opinion substituted therefor.

Jacob Conner and his wife, testatrix Zanette Conner, for many years lived on a farm in Keokuk County, Iowa. Their only child, Martha, was born in 1886. In 1912 Martha married appellant, John Herman. Martha died testate in 1944. Her estate was willed to her said husband. Appellants Elvin and Ernest Herman are their two adult sons. Appellee Ellis C. Conner contends he was Martha's illegitimate son, born in 1903.

The joint will of Zanette Conner and her husband, Jacob, made in 1925, recited their property was in fact owned by them jointly, regardless of their legal title. It gave the survivor a life estate in all the joint property, and subject thereto, certain real estate to their daughter, Martha, and other real estate to Ellis Conner, the residue to be converted into cash and divided equally between Martha and Ellis. It was probated first after Jacob's death in 1936 and again after Zanette's death in 1946. Ellis Conner was listed as a grandson in the records of both estates. Appellee Updegraff, the lawyer who drew the will,

was executor of the estate of Jacob, closed in 1938. He is now executor of Zanette's estate.

Shortly prior to Jacob's death Zanette's sister, Iowa Keister, died, leaving Zanette about $8000. The first order (1937) admitting to probate the joint will (to which Martha Herman and Ellis Conner and their spouses made written consent) adjudged the assets Zanette would receive from the Iowa Keister estate were Zanette's separate and individual property and not a part of Jacob's estate.

The personal property of Jacob's estate consisted of farm machinery, equipment and animals, inventoried at $1500. The final report of appellee-executor for Zanette's estate recites that Zanette, from her individual and separate estate (received from Iowa Keister), paid the debts of Jacob's estate amounting to three or four thousand dollars, with the agreement she would reimburse herself from the sale of the personalty remaining when she ceased operating the farm, and that she did so.

The report recites also that the effective date of the testamentary disposition of Zanette's separate and individual property (from Iowa Keister estate) as distinguished from the jointly owned property was the date the admission of her will to probate, that Martha Herman and Ellis Conner acquired no interest therein prior to her death, and that Martha having predeceased testatrix, Martha's children and heirs at law, Ellis C. Conner, Ernest A. Herman and Elvin E. Herman, inherit Martha's half of this property, in equal shares of one third each. (See section 633.16, Code of 1946.) Another recitation in the report is that a $4000 certificate of deposit payable to Zanette Conner or Ellis Conner, survivor, and held by the executor, was the property of Ellis Conner by virtue of an inter vivos gift from Zanette.

John Herman, Elvin Herman and Ernest Herman filed extensive objections to the final report and have appealed from the order overruling such objections and approving the report. Ellis Conner and C. G. Updegraff, executor of Zanette's estate, are the appellees. The foregoing abridged statement is limited to such parts of the final report as are involved in the appeal. There are three separate basic questions:

1. Whether Ellis Conner was Martha's son.

2. Whether there was a valid gift inter vivos from Zanette to Ellis of the $4000 certificate of deposit.

3. Whether Zanette's estate should account to the remaindermen of her husband's estate for the proceeds of the sale of the personal property.

The story of Ellis Conner's lineage is set out in an affidavit, Exhibit A, made by Zanette Conner in January 1945. It recites Martha Conner, born in 1886, was the only child of Zanette and Jacob. In 1902 Martha had an affair with a man, became pregnant, and in February 1903 gave birth to Ellis Conner at a hospital in Chicago to which she had been removed by her parents; Dr. Strawbridge, of Sigourney, made the arrangements and he and Zanette were present at the birth of Ellis; Zanette brought the infant Ellis and Martha from Chicago to the Conner farm home where they all continued to reside as a family until Martha's marriage to John Herman; Ellis was treated by Zanette and Jacob as though he were their own child, was recognized as such, and was named a beneficiary in their joint will; Zanette was the last living person with personal knowledge of the foregoing facts and made the affidavit that the true and correct parentage of Ellis, place and date of his birth might be known to all concerned. At the same time Zanette executed another affidavit, Exhibit B, upon the form of Iowa State Health Department, Division of Vital Statistics, setting out the birth of Ellis at Chicago to Martha out of wedlock, etc.

Elmer H. Mertz, a close friend of the Conners, testified that in 1930 and several times thereafter, Zanette told him of Ellis' birth, etc., the story repeated by the witness being substantially that set out in Exhibit A. She told him also of all their efforts to shroud Ellis' birth in secrecy and that she wanted the papers (Exhibits A and B) filed of record after her death.

A witness who lived in the Conner home testified that before Martha and Zanette went to Chicago the family said Martha had a "white swelling"; that when neighbors would come to the Conner home Martha would get into bed with her clothes on and would arise and work after their departure. Several witnesses who knew Martha expressed the opinion she was then pregnant. There was evidence that later "there was common talk in the

neighborhood that the child belonged to Martha." Witnesses testified Ellis once introduced Martha as his mother and that she acknowledged the introduction.

I. Appellants complain that evidence of the oral and written statements of Zanette Conner relative to the lineage of Ellis Conner was admitted over their objections. Declarations with respect to pedigree and family history by a relative or one in such a position that he would be likely to know the facts and who is deceased or unavailable when the declarations are offered in evidence constitute a recognized exception to the hearsay rule. 16 Iowa L. Rev. 92; In re Estate of Frey, 207 Iowa 1229, 224 N. W. 597; Alston v. Alston, 114 Iowa 29, 86 N. W. 55; In re Estate of Clark, 228 Iowa 75, 97, 98, 290 N. W. 13; In re Estate of Felle, 237 Iowa 1082, 23 N. W. 2d 910; In re Estate of Corbin, 235 Iowa 654, 17 N. W. 2d 417.

In re Estate of Carroll, 149 Iowa 617, 620, 128 N. W. 929, 930, states: "As a general rule such information or statements concerning which a witness may testify must have antedated the litigation and the controversy, so that they could not have been induced thereby. They must be ante litem motam."

When Ellis was a young man he was told he was illegitimate by his fiancée's parents. He became very excited and demanded of Jacob and Zanette that he be told his pedigree, and he was told. Appellants argue this was a controversy and therefore the declarations of Zanette were not ante litem motam. This contention is without merit. Some of the declarations were made twenty years later and obviously could not have been induced thereby. Nor was this a controversy of the nature referred to in the rule. Certainly there was no controversy over Zanette's estate until after her death. It is fair to assume that if she had any thought her estate might be involved in litigation over this question she would have avoided this by definitely providing for the disposition of her separate property as she desired.

Another contention is that Exhibits A and B were inadmissible because they were ex parte affidavits. The admission of these was proper, not because they were affidavits, but because they were written declarations. Their competency is governed by the same rule as Zanette's oral declarations. In re Estate of

Frey, supra, 207 Iowa 1229, 224 N. W. 597; 20 Am. Jur., 411, Evidence, section 468.

Appellants contend also that declarations are incompetent unless made to someone in the family. That is not the rule and the authorities do not so hold.

■ The evidence of general talk in the neighborhood that Ellis was Martha's child was admissible.

· In re Estate of Wise, 206 Iowa 939, 940, 221 N. W. 567, 568, states:

"It does appear, however, that it was the common and general report in the community that the decedent was the father of the appellee. While it is true that such neighborhood belief or expression of opinion, or what is sometimes and quite properly denominated 'village gossip,' is not controlling in a case of this kind, we have held that evidence in regard thereto is admissible."

Among other decisions are Robertson v. Campbell, 168 Iowa 47, 55, 56, 147 N. W. 301; Trier v. Singmaster, 184 Iowa 307, 319, 167 N. W. 538; In re Estate of Clark, supra, 228 Iowa 75, 97, 290 N. W. 13. No error appears here.

■ Nor was it error to admit, over objections, the opinion testimony of lay witnesses qualified by their experience and observation that Martha was pregnant. 20 Am. Jur., Evidence, 719, 720, section 859; Yahn v. City of Ottumwa, 60 Iowa 429, 432, 15 N. W. 257; Shaw v. Duro, 234 Iowa 778, 790, 14 N. W. 2d 241.

■ Appellants assign error to the overruling of their objection to Elmer Mertz' testimony relative to Zanette's declarations in 1930, on the ground it was privileged because Mertz was a census taker. It is a sufficient answer that the record shows he was not acting as such when the declarations were made.

· · ■ II. Zanette's individual money from the Iowa Keister estate was deposited in a bank. Elmer H. Mertz, the bank officer who handled Zanette's business, testified that a few days after Martha's death in 1944 Zanette told him she wanted to give Ellis some of her money and instructed him that $4000 of said deposit, then represented by two certificates, was Ellis' and

was to be delivered to him at her death, she to receive the interest for life. Mertz was instructed "to draw up the certificate so she could draw the interest." Mertz indorsed the certificates then outstanding, "Credited to the account of Zanette Conner or Ellis Conner, Survivor", and upon their maturity issued a certificate for $4000 to "Zanette Conner or Ellis Conner, Survivor." He testified this certificate was submitted to and approved by Mrs. Conner and that she referred to it as Ellis' money and instructed him to deliver it to Ellis when she died; that he placed the certificate in a safe-deposit box in the bank in which all her papers were kept but to which she had no access; that when the certificate matured he credited her drawing account with the interest and issued a renewal in the same form and that after her death, another officer of the bank, by mistake, turned the certificate over to executor Updegraff.

The foregoing statement, although not a summary of the record is sufficient to furnish the basis for the consideration of the principal assignments of error in this division of the case. Appellants contend Mertz was an incompetent witness under the dead man statute, section 622.4, Code of 1946, because he "is the person through or under whom Ellis Conner must claim." This theory is incorrect and the rule of McClanahan v. McClanahan, 129 Iowa 411, 105 N. W. 833, cited in support thereof, has been repudiated by later decisions. Stiles v. Breed, 151 Iowa 86, 130 N. W. 376; Horner v. Maxwell, 171 Iowa 660, 153 N. W. 331; Stutsman v. Crain, 185 Iowa 514, 170 N. W. 806; In re Estate of Iwers, 225 Iowa 389, 280 N. W. 579; In re Estate of Larsen, 235 Iowa 57, 15 N. W. 2d 919. Mertz was merely to hold the evidence of the deposit during Zanette's life and deliver it to Ellis upon her death. It matters not whether he be referred to as an agent or a trustee. He had no interest in the certificate or the deposit which he could pass to anyone. Tucker v. Tucker, 138 Iowa 344, 116 N. W. 119; In re Will of Gorden, 238 Iowa 580, 27 N. W. 2d 900.

■■ Another contention is that Mertz' testimony violated the parol-evidence rule in that it was an attempt to vary the terms of the certificate of deposit. The bank was the only party to the instrument who agreed to do anything. Generally speak-

ing, its liability could not be varied by parol. It is clear, however, a valid gift of the certificate of deposit or the funds represented thereby could be màde by parol. Likewise, the intention of Zanette, the donor-depositor, in having the certificate made payable to herself or Ellis, survivor, could be shown by parol. Sinift v. Sinift, 229 Iowa 56, 81 to 86, 293 N. W. 841; In re Estate of Winkler, 232 Iowa 930, 5 N. W. 2d 153; O'Brien v. Biegger, 233 Iowa 1179, 11 N. W. 2d 412. Except where such intent is evidenced by an unambiguous written agreement it is proper to consider parol evidence. In re Estate of Murdoch, 238 Iowa 898, 901, 29 N. W. 2d 177; McManis v. Keokuk Sav. Bk. & Tr. Co., 239 Iowa 1105; 33 N. W. 2d 410; In re Estate of Winkler, supra. We conclude it was proper in this case.

 Ellis' failure to file claim within six months did not bar his rights under the nonclaim statute. Section 635.68, Code of 1946. The reason is this is not a claim against the estate. Ellis merely seeks to recover property which he asserts belongs to him and was converted by the executor.

 Delivery of the certificate of deposit to Mertz with instructions to deliver to Ellis upon Zanette's death was sufficient to consummate à gift inter vivos. Larimer v. Beardsley, Trustee, 130 Iowa 706, 107 N. W. 935; In re Estate of Podhajsky, 137 Iowa 742, 115 N. W. 590; Jones v. Nicholas, 151 Iowa 362, 130 N. W. 125; Pyle v. East, 173 Iowa 165, 155 N. W. 283, 3 A. L. R. 885; Reeves v. Lyon, 224 Iowa 659, 277 N. W. 749. We do not imply delivery was essential in this case. See O'Brien v. Biegger, supra; In re Estate of Winkler, supra.

 Nor was the gift testamentary in character. If a gift is absolute it will not be defeated by the mere postponement of the enjoyment until the donor's death. In re Will of Gorden, supra, 238 Iowa 580, 27 N. W. 2d 900, and decisions last above cited.

The cause was tried to the court, in probate, as an ordinary action and the findings of fact have the effect of a jury verdict. The finding that Zanette made a completed gift inter vivos to Ellis of the certificate of deposit is supported by substantial evidence and will not be disturbed upon appeal. Nor

does reversible error appear in any rulings or orders of the court involving this phase of the case.

III. The trial court found all the personal farm property in the Jacob Conner estate, through an agreement among all the beneficiaries in the will consented to by the executor, was delivered to Zanette absolutely in consideration of her paying the debts and expenses of the Jacob Conner estate from her separately owned property, which payment exceeded the then value of said property and that the order approving the final report of the executor of the estate of Jacob Conner (which recited Zanette had paid direct, of her own account, all the debts and charges) constituted an approval of the executor's consent to said arrangement. Hence, the executor of Zanette's estate was not required to account to the remaindermen of Jacob's estate for said property.

There was evidence that Zanette, Ellis, Martha and her husband made a family agreement among themselves that Zanette should take the personal property absolutely and in return should pay the estate debts and charges; that the executor consented to this agreement and it was carried out and no claims were filed against the estate, and that the amount paid out by Zanette was more than double the value of the personal property in question.

Beneficiaries under a will may agree to a distribution of estate assets in a manner different than the will provides. In re Estate of Swanson, 239 Iowa 294, 300, 31 N. W. 2d 385, 389, states that beneficiaries under a will may agree to disregard the instrument and have the estate distributed in any manner they see proper, that family settlements are favored by courts and that the beneficiaries are not compelled to accept provisions of the will, citing Harris v. Randolph, 213 Iowa 772, 783, 236 N. W. 51; 69 C. J., Wills, section 2673; annotation in 97 A. L. R. 468, 470; Coomes v. Finegan, 233 Iowa 448, 451, 7 N. W. 2d 729, 730. There is substantial support in the record for the finding by the court that Zanette took the personal property in question absolutely.

IV. We revert to the issue whether Ellis was Martha's son and under the antilapse statute, section 633.16, Code of 1946, entitled to inherit, along with Elvin and Ernest Herman,

the individual property of Zanette, willed to Martha. Over objections by appellants that he was an incompetent witness under the dead man statute, section 622.4, the court permitted Mr. Updegraff, executor of Zanette's estate, to repeat communications between the witness and Zanette in which she detailed the story of Ellis' lineage. Error is predicated upon these rulings. We conclude this assignment of error is well founded.

Mr. Updegraff was a party to the action within the purview of the dead man statute. Williams v. Barrett, 52 Iowa 637, 641, 3 N. W. 690, 693, states:

"Counsel for appellant contend that the witness was competent because he had no interest whatever in the question [concerning which he testified] * * *. This may be conceded, but the language [of the statute] * * * is plain and explicit that 'no party to any action or proceeding * * * shall be examined as a witness * * * against the executor or heir at law * * * of such deceased persons.' * * *. John T. Clark was a party to the action, and for that reason was disqualified as a witness to testify to personal transactions between himself and the deceased. We think the fact that the other defendants were not necessarily jointly liable with him, and that separate actions might have been maintained against the defendants, makes no difference. There was but one action on trial, and the witness being a proper party defendant therein was by the very terms of the statute incompetent to testify to the facts under consideration."

Bohle v. Brooks, 225 Iowa 980, 983, 282 N. W. 351, 353, states:

"Even tho the interest of Mr. Brooks is only nominal, yet he is a party to the action, and in conformity with the statute and our former pronouncements, as such party he is incompetent to testify as to the personal transactions with the decedent."

Burton v. Baldwin, 61 Iowa 283, 285, 16 N. W. 110, 111, held incompetent the testimony of Sophronia Baldwin who was made a party to a partition proceeding for the purpose of ascertaining and assigning her dower, and stated:

"She is a party to the action, her testimony relates to a

personal communication between herself and a person now deceased, and is given against the heir at law of such deceased person. It is true, she has no interest in common with the other defendants against the plaintiff, but such adverse interest does not seem to be necessary in order to the exclusion of the testimony."

In the language of Clinton Sav. Bk. v. Underhill, 115 Iowa 292, 294, 88 N. W. 357, 358: "A mere nominal party, or one who has no substantial interest in the action, is disqualified under this section."

To the same effect is Nugent v. Dittel, 213 Iowa 671, 239 N. W. 559.

In Frye v. Gullion, 143 Iowa 719, 724, 121 N. W. 563, 565, 21 Ann. Cas. 285, parties to partition proceedings filed a disclaimer. The court said this "may possibly have removed the disqualification of interest; but it could not remove the disqualification which still attached to them as parties, unless we are able to say that they were no longer proper parties to the action."

James v. Fairall, 168 Iowa 427, 431, 148 N. W. 1029, was an action to set aside a will. A devisee who had been made a party defendant filed a disclaimer and the action was dismissed as to him. The court held the circumstances indicated collusion with plaintiff and the dismissal did not have the effect of making his evidence competent.

An article by Mason Ladd in 19 Iowa L. Rev. 521, 526, discusses the decisions and states:

"The statute excludes parties because they are parties and as distinguished from persons interested in the litigation. * * * The cases in the above situations have applied literally the statute which is apparently based upon the theory that even nominal parties would be sufficiently concerned in the interests which they merely represent to be unsafe as witnesses."

The text in 70 C. J., Witnesses, 229, section 291, states: "Under some statutes, however, the interest of a party is not necessarily an element of his incompetency * * *." Citing, among others, several Iowa decisions.

In considering his competency under the dead man statute Updegraff as a witness may not be separated from Updegraff, executor. This court held in Schmid v. Kreismer, 31 Iowa 479, that while generally an administrator is a competent witness for the estate, he is not competent in a case where the adverse party is also an administrator.

Although Iowa decisions uniformly hold the witness incompetent under the dead man statute though a mere nominal party, Mr. Updegraff was not in that category. This was not merely a controversy between rival claimants of a part of the property. Some of the parties contended the executor should be required to account to the remaindermen of Jacob Conner's estate. Ellis claimed the certificate of deposit not from the Hermans but from the executor and the court ordered the executor to deliver it to Mertz for Ellis.

These examples make it clear the executor was not a mere nominal or formal party to the action but was a real party in interest in his capacity as such. However, it is immaterial whether he was a real party in interest as to the issue involved in this phase of the case. The Iowa statute covers parties to the action or proceeding, not merely parties to the issue in question. See authorities above cited. In that respect the Iowa statute differs from statutes in some other states.

The dissenting opinion refers to a Minnesota decision. The Minnesota statute states: "It shall not be competent for any party to an action * * * to give evidence therein of or concerning any conversation * * * relative to any matter at issue between the parties." 2 Mason's Minn. Stat. (1927) section 9817, M. S. A. (1947) section 595.04. It has been held the term party to the action, under that section, means a party to the issue to which the testimony relates, and not merely a party to the record, Bowers v. Schuler, 54 Minn. 99, 55 N. W. 817, and that an executor or administrator while a necessary party to the record is not a party to the issue, Exsted v. Exsted, 202 Minn. 521, 279 N. W. 554, 117 A. L. R. 599.

These decisions do not accord with those of this court under the Iowa statute. Schmid v. Kreismer, supra, 31 Iowa 479; In re Estate of Manning, infra, 215 Iowa 746, 750, 244 N. W. 860. They serve to indicate that in cases of this nature decisions

of other courts based upon other statutes are of questionable value.

Zanette's will devised Martha half of Zanette's individual property. Martha predeceased Zanette. Under the antilapse statute Martha's heirs inherit this property. Her sons, appellants Elvin and Ernest Herman, are in this classification. However, they do not inherit this property from Martha. They take it direct from Zanette under her will. In re Estate of Hulett, 121 Iowa 423, 96 N. W. 952. The effect of the statute is to make the heirs of Martha, devisees in Zanette's will by substitution. McAllister v. McAllister, 183 Iowa 245, 252, 167 N. W. 78. Hence Elvin and Ernest are devisees in Zanette's will within the classification and protection of section 622.4. That Updegraff as executor would likewise be protected would not alter the situation. The protection afforded by the statute is a shield, not a sword. Code section 622.5 does not make the executor, heir et al. competent to testify to communications between the witness and decedent against another party protected by section 622.4. O'Brien v. Biegger, 233 Iowa 1179, 1209 et seq., 11 N. W. 2d 412; Duffield v. Walden, 102 Iowa 676, 680, 72 N. W. 278; Neas v. Neas, 61 Iowa 641, 643, 17 N. W. 30; In re Estate of Manning, 215 Iowa 746, 750, 244 N. W. 860.

On appeal in an action at law tried without a jury, where evidence was admitted over objections, it will be presumed the court considered such evidence, and if it is incompetent and the evidence as a whole is conflicting, the judgment will be reversed. Leasman v. Nicholson, 59 Iowa 259, 12 N. W. 270, 13 N. W. 289; Jaffray v. Thompson, 65 Iowa 323, 21 N. W. 659; Iowa Electric Co. v. Scott, 206 Iowa 1217, 220 N. W. 333. Although there was other strong and persuasive evidence ample to support the finding of the trial court that Ellis was Martha's son and the evidence in opposition thereto was largely negative in character, there was enough conflict in the record to make Ellis' lineage a question of fact rather than of law. Hence, a reversal is necessary.

However, the issues in this division of the case were separate and distinct from those of the other divisions involved in this appeal. The case was tried to the court and involved other issues not presented upon appeal. Under all the circum-

stances we conclude that part of the order relating to the $4000 certificate and that part relating to an accounting for the proceeds of the sale of the personal property should be affirmed and only that part based upon the finding Ellis was Martha's son should be reversed and ordered remanded for further proceedings. In re Estate of Ring, 237 Iowa 953, 968, 22 N. W. 2d 777, and citations.

The costs upon appeal are ordered taxed two thirds to appellants and one third to appellees.—Affirmed in part, reversed in part and remanded.

BLISS, GARFIELD, MULRONEY, and HAYS, JJ., concur.

SMITH, HALE, WENNERSTRUM, and MANTZ, JJ., dissent.

SMITH, J. (dissenting in part)—I concur in all the majority opinion except Division IV which holds Mr. Updegraff, executor, incompetent as a witness because of the dead man statute, Code section 622.4. I do not think our prior decisions absolutely require this holding and if they be construed so to do I think they should be overruled.

The statute, so far as pertinent here, provides: "No party to any action or proceeding * * * shall be * * * a witness in regard to any personal transaction or communication between such witness and a person * * * deceased * *. * against the * * * legatee [or] devisee * * * of such deceased person * * *." The majority holds the executor here was a "party" within the meaning of that language.

The opinion cites and quotes from Williams v. Barrett, 52 Iowa 637, 641, 3 N. W. 690, which case apparently marks the commencement of the rule of strict verbal construction of the statute resorted to here by the majority. In that case the witness as maker of the note sued on testified as to matters affecting the liability of his co-maker and the payee who had endorsed the note to plaintiff. He was not a party in any representative capacity but one of the principal defendants.

A similar situation existed in Clinton Sav. Bk. v. Underhill, 115 Iowa 292, 88 N. W. 357. In fact no case is cited in which a witness was held to be disqualified merely because he was a

party in a representative capacity. There is language in some which taken alone and literally would require the holding of such a witness to be incompetent. But an examination of the cited cases shows a situation in each which materially distinguishes it from the case here. Each is a case in which the witness, though without interest, had nevertheless such personal relationship to the issues as to make him individually a necessary or proper party. See e. g. Bohle v. Brooks, 225 Iowa 980, 983, 282 N. W. 351; Nugent v. Dittel, 213 Iowa 671, 239 N. W. 559; Frye v. Gullion, 143 Iowa 719, 121 N. W. 563, 21 Ann. Cas. 285.

Here it is literally true the witness, Updegraff, is not only not interested, *he is not a party*. The party is Updegraff, executor, or the estate he represents.

The drawing of this distinction exactly conforms to the obvious and only possible purpose and intent of the statute. It is not an arbitrary, artificial, provision but one based on reason and justice. "The purpose is to prevent the surviving party from having the benefit of his own testimony where, by reason of the death of his adversary, his representative is deprived of the decedent's version of the transaction." 58 Am. Jur., Witnesses, section 215, page 147, and cases cited. See also 70 C. J., Witnesses, 206, 207.

Mr. Updegraff and decedent were not adversaries nor is Mr. Updegraff as an individual in any sense an adversary of either appellants or appellee. Nor is he, even as executor of the estate. There is here no claim against the estate. The controversy is between rival claimants of a part of the property. Mr. Updegraff, *as executor,* is in possession of the personal property of the estate and as such only is he a party. He, as a witness, is within neither the spirit nor the strict language of the statute.

I find no Iowa case that conclusively settles the question of Mr. Updegraff's competency as a witness. However, this court has held that one who was a proper party defendant but has ceased to be interested in the result because judgment has already been taken, or could under an existing stipulation be taken, against him was not incompetent as a witness in favor of the other defendants against the plaintiff administrator.

Conger, Admr. v. Bean, 58 Iowa 321, 322, 12 N. W. 284; Clinton Sav. Bk. v. Underhill, supra. In the Conger case we said concerning the witness: "That he was technically a party cannot be denied. But after the filing of the stipulation * * * his rights were virtually concluded." See also Burton v. Baldwin, 61 Iowa 283, 285, 16 N. W. 110, wherein it is implied that if the widow's dower had been admeasured before her deposition was taken she would have been a competent witness to conversations between herself and decedent in favor of the other defendants in a controversy between heirs in a partition suit in which plaintiff claimed certain conveyances to defendants were advancements and not gifts.

However, these cases serve only to show the term "party," as used in our statute, does not conclusively render every named party incompetent under the statute.

Because statutes of this character are not uniform, citations from other jurisdictions and textbooks must be made with discrimination. But we are not entirely without foreign assistance in solving our present problem. The Minnesota court confronted a similar one in Exsted v. Exsted, 202 Minn. 521, 527, 528, 279 N. W. 554, 559, 117 A. L. R. 599. The statute of that state was similar to our own. The court's opinion in that case thus stated its substance: "The testimony of any party to an action or of any person interested in its outcome as to the conversation of a deceased person relative to any matter in issue is inadmissible. 2 Mason's Minn. St. 1927, §9817 [M. S. A. (1947) section 595.04]."

In that case plaintiff as administratrix of her deceased divorced husband's estate and guardian of their minor son, decedent's sole heir, was held not to be disqualified either as an interested person or as a "party to the action" to testify as to conversations with decedent. As bearing on her status as a "party" the opinion said: "An executor or administrator, while a necessary party to the record, is not a party to the issue," citing Bryant v. Livermore, 20 Minn. 313 (Gil. 271), described as a case involving the status of a guardian ad litem and general guardian and the right of a judge related to him to sit in a cause involving the interests of his ward.

The opinion in the Exsted case, speaking of the Bryant case,

said it held the guardian was *not a party to the action but a representative of the real party in interest* and concludes:

"An executor or administrator fills a like capacity of legal representative appointed by the court of the estate of a deceased person and of trustee for all persons having rights in it. * * * Defendants do not assert that Mrs. Exsted would have been incompetent to testify had she resigned as guardian and administrator prior to the suit. The fact that she did not do so but instead carried out the order of the court by representing the estate and the infant * * * should not disqualify her as a witness."

I find a similar holding by the Maryland court in Johnson v. Johnson, 105 Md. 81, 65 A. 918, 921, 121 Am. St. Rep. 570. That court held that Mrs. Johnson, who represented her minor children as next friend in a will contest, was not a "party" within the meaning of the evidence act but was competent to testify as to personal transactions between herself and decedent, her divorced husband. See also Doty's Admrs. v. Doty's Guardian, 118 Ky. 204, 215, 80 S. W. 803, 806, 2 L. R. A., N. S., 713, 4 Ann. Cas. 1064, holding the plaintiff guardian a competent witness for the ward, David Irvine Doty, illegitimate son of herself and decedent, in an action for damages against decedent's estate, based on an alleged contract for her ward's benefit. The Kentucky court said:

"The plaintiff * * * is David Irvine Doty. The recovery is his. The guardian may be removed by the county court at any time. Her only power is to protect the rights of the infant while she is guardian. If she were to resign as guardian on learning that her testimony was necessary to protect his interest, and another were appointed in her stead, she could * * * testify for the infant in the action."

I concede the Kentucky statute is different from ours in that it provides "No person shall testify for himself," etc. Civil Code Proc., section 606. But following the strict and narrow construction given by the majority here to the words "party to any action" in our Code section (622.4, Code of 1946) the

Kentucky court would have had to say the action was being prosecuted for plaintiff's benefit as guardian and that she was testifying "for herself." Instead that court cut through technicality and distinguished between the *witness* and the *guardian,* just as if they were separate persons, as indeed they were. There really is little real difference in meaning between a witness testifying *"for* himself" and one testifying *against* the other party as our statute provides. The real point is that when one is a "party" in a representative capacity only, he should not be deemed such when he testifies. He does not testify "for himself" as an individual.

In the cases I have cited the estate or person represented by the alleged "party" was directly interested in the litigation. Here even the estate, represented by Mr. Updegraff, had no interest in the result. It was a party to the record but not a party to the issue between appellants and appellee.

As suggested in both the Exsted and Doty cases, Mr. Updegraff could resign as executor and his competency as a witness would then be clear. Such roundabout procedure should not be necessary. There is no logic in construing the language of the statute so as to close the lips of a totally disinterested witness because of the death of a person who was in her lifetime, and whose estate is now also, without interest in the issue between these rival claimants to heirship; *and this merely because the court appointed the witness executor of the decedent's estate.* Such strict construction is not necessary and operates here to the disadvantage of an innocent victim of circumstances. Such construction produces a result which is a far cry from the purpose of a statute designed to close the lips of a witness because his adversary, due to death or insanity, is not available to dispute him. It makes of the statute an artificial, technical and arbitrary instrument of injustice.

The majority opinion says: "Updegraff as a witness may not be separated from Updegraff, executor," citing Schmid, Admr. v. Kreismer, Admx., 31 Iowa 479. The witness in that case was the same person as the defendant but she was held disqualified as a witness, not because she was a party, but because at common law and under the Code of 1851, an adminis-

trator was on the ground of interest not competent as a witness in behalf of the estate. And though under section 3980 of the Revision of 1860 the general common law disqualification on account of interest was abolished, section 3982 of that Code restored it in cases where the adverse party (plaintiff) was an administrator. In other words she (as a witness) was incompetent *as an interested person* to testify as to facts that "transpired before the death" of the person of whose estate the adverse party (plaintiff) was administrator.

The distinction in status between Updegraff as executor and as an individual witness is sound and supported not only by the Minnesota, Maryland and Kentucky cases already cited but also by Penny v. Croul, 87 Mich. 15, 49 N. W. 311, 13 L. R. A. 83—all involving the question in relation to so-called dead man statutes.

I conceive it our duty to construe the statute so as not to extend its area of disqualification. Our general statute abolishes the ancient common-law rule that rendered all parties and interested persons incompetent. Sections 622.1 to 622.3, inclusive, Iowa Code, 1946. Section 622.4 (the dead man statute) is in the nature of a saving provision. I would construe it liberally in favor of competency, where such construction does not open the door to the fraud and abuse which the statute is designed to prevent. The present case is a perfect example of the wisdom of such construction. I am not in sympathy with the apparently growing sentiment among lawyers over the country for total abolition of dead man statutes. Properly construed and applied they are wise and just. But they should not by technical application be used arbitrarily to exclude valuable and disinterested testimony. These are my reasons for dissenting in a case that concededly involves a small part of the decedent's estate and in which probably the same result would be reached without the testimony in question.

I would affirm.

HALE, WENNERSTRUM and MANTZ, JJ., join in this dissent.